[No. 8379. Department One. January 21, 1910.]

MANLEY ETTOR et al., *Appellants*, v. THE CITY OF TACOMA
et al., *Respondents*.[1]

STATUTES—REPEAL—EFFECT ON PENDING SUIT—MUNICIPAL CORPORATIONS—CHANGE OF GRADE—DAMAGES. Since the right to recover damages resulting from the original grading of city streets rests upon statute (Laws 1893, p. 207, § 47, and Laws 1907, p. 336, § 48) the repeal of the acts without any saving clause, after suit brought, bars a recovery and works a discontinuance of the suit.

EMINENT DOMAIN—CHANGE OF GRADE—DAMAGE. The original grading of a city street is not a taking or damaging of property, within Const., art. 1, § 16.

STATUTES—VALIDITY—MOTIVE OF LEGISLATURE. The motive of the legislature, or the passing of an act "by stealth," cannot be inquired into by the courts in order to affect the validity of the law.

MUNICIPAL CORPORATIONS—STREETS—RIGHT TO MAKE IMPROVEMENTS—WAIVER OF OBJECTION—DAMAGE FROM CHANGE OF GRADE. The

[1]Reported in 106 Pac. 478; 107 Pac. 1061.

objection that a city can only grade streets under the terms of an ordinance, cannot be raised in an action for damages to abutting property, when the owner might have enjoined the improvement complained of but failed to do so.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 8, 1909, in favor of the defendants, upon granting a nonsuit dismissing an action for damages for the original grading of a street. Affirmed.

*Boyle, Warburton & Brockway*, for appellants.

*T. L. Stiles, Frank R. Baker*, and *F. A. Latcham*, for respondent City of Tacoma.

*H. H. Field* and *Geo. W. Korte*, for respondent Chicago, Milwaukee & St. Paul R. Co.

CHADWICK, J.—This is an action instituted by plaintiffs to recover damages consequent upon grading certain streets in the city of Tacoma. Under § 47, chap. 84, Laws 1893, and § 48, chap. 153, Laws 1907, such damages were recoverable. The legislature of 1909, Laws 1909, p. 151, § 1 (Rem. & Bal. Code, § 7815), repealed this law so that no remedy existed at the time this case was tried in the lower court. Judgment was rendered against plaintiffs in the court below, and they have appealed.

Many questions are raised, but we think the act of the last legislature has reduced this case to a single abstract question of law. In the absence of some statute, a municipal corporation is not liable for damages resulting from the original grading of a street, alley, or avenue, either within the original corporate limits or in any addition thereto. The power to establish grades is incident to its charter, and is implied from the dedication. It was so held in *Fletcher v. Seattle*, 43 Wash. 627, 86 Pac. 1046, 88 Pac. 843, where, in the first opinion rendered by the court, the reasons for the rule are set forth and further illuminated by ample quotation from Mr. Dillon's work on Municipal Corporations, vol. 2 (4th ed.), § 995. Thereafter the attention of the court was called

to a statute, Bal. Code, § 821, being the same as § 47 of the Laws of 1893, in so far as it applies to cases of this character, and the opinion in the *Fletcher* case was reversed and recovery was allowed. Reference to the former act will show that it in terms provided that the section allowing a recovery for grading streets should apply only to the original grading of such streets, avenues, or alleys.

To bring the law of this state in accord with the rule in all others, as well as the great weight of authority and reason, as we shall presume, the legislature of 1909 amended the existing law, changing the proviso of the former acts so that it now reads as follows: "That this section shall not apply to the original grading of such street, avenue, or alley." This change was effected while the present action was pending—indeed, while it was on trial; and it is urged on the one hand that the right to recover damages being repealed without saving existing causes of action, no recovery can be had, while on the other hand, it is insisted that the act of 1909 operates as a deprivation of a right to recover damages already accrued, and must be held to be in contravention of the constitution in so far as it affects existing causes of action. If the act of 1909 does deprive appellants of a substantive right, their contention should be sustained, as a similar contention was sustained in *Miller v. Union Mill Co.,* 45 Wash. 199, 88 Pac. 130. The cases cited to sustain the judgment of the court in that case clearly point the distinction that must exist in all cases, and upon which there has been slight difference of opinion on the part of courts and text writers. The right of action in the *Miller* case, and in all similar cases, was sustained, not because the right had accrued while the statute was in existence, but because a right existed independent of the statute. This distinguishes most, if not all, of the cases relied upon by the appellant. In appellant's brief it is said:

"It may be further urged that where a statute gives a corporation or municipality a right to condemn property and

such statute is repealed while condemnation is pending, the proceeding falls to the ground with the repeal of the statute. Such a case in no manner resembles the case at bar. A condemnation proceeding is instituted before the property is taken, a proceeding to determine what the rights of the parties *will* be when the property is subsequently taken by the condemning corporation. No one, of course, has any vested rights in the matter until the property has been taken or damaged. But when this has been done, as plaintiffs' property in this case was damaged, then the case is entirely different and the rights resulting from such taking or damaging cannot be divested by legislative enactment. This appears plainly from the cases of *Stevens v. Marshall*, 3 Pinney 203; *City v. Eaton*, 83 Ill. 535, already referred to, and 8 Cyc. 906, where it is said that 'the right of a land owner to damages for land taken for public use becomes absolute, when the property is actually taken.' That the rights to damages become absolute and vested as soon as the property is taken or damaged is evident also from the fact that the condemnation proceedings cannot thereafter be abandoned. *Shannahan v. City of Waterbury*, 63 Conn. 420, 28 Atl. 611; *Wood v. Trustees*, 164 Pa. St. 159, 30 Atl. 237; *St. Louis R. Co. v. Teeters*, 68 Ill. 144."

The error of this reasoning lies in this, that the original grade of a street, avenue, or alley in the platted portion of a city or town is not a taking or damaging within the meaning of art. 1, § 16 of the constitution. This is made plain in the first opinion in the *Fletcher* case. See, also, *Callender v. Marsh*, 1 Pick. 418; *Pontiac v. Carter*, 32 Mich. 164; *Radcliff's Ex'rs v. Mayor of Brooklyn*, 4 N. Y. 195, 53 Am. Dec. 357; *Wilson v. Mayor of New York*, 1 Denio (N. Y.) 595, 43 Am. Dec. 719.

In 2 Dillon, Municipal Corporations, 995b, the author says:

"For the reasons above suggested, it seems to us that, on principle, the mere provision of the constitution imposing a liability for property *damaged* for public use does not create a liability on the part of the municipality for reducing the natural surface of the street, in the course of its normal and ordinary improvement for street purposes proper, to a grade

line for the first time established. If there are cases to the contrary we doubt whether they were well considered and think that they are not well decided. Admitting that under the amended constitutional provision under consideration a municipality may be required to make compensation, not only in cases where there is an actual physical invasion of the adjoining property, but also a physical disturbance of a *right or easement* connected therewith, such as the easement of access, or of light and air, which causes a special damage over and above that which is sustained by the public generally, still such rights and easements of the abutting owner or the right to the support of his soil, is, in the case under consideration, subject, by the very terms and conditions of the dedication or acquisition of the street, to the right of the public to bring it down for street purposes proper to such grade line as the public authorities shall first adopt."

The deeper reason is stated in the case in *Radcliff's Ex'rs v. Mayor of Brooklyn, supra,* as follows:

"The opening of a street in a city is not necessarily an injury to the adjoining land owners. On the contrary, it is in almost every instance a benefit to them. The damage which they sometimes sustain, because the level of the street does not correspond with the level of their land, is usually more than compensated by the increased value which the property acquires from having a new front on a street. In some instances the land owner will suffer a heavy loss; and in this case may, perhaps, be one of the number; but it is *damnum absque injuria,* and the owner must bear it. He often gets the benefit for nothing, when the value of his land is increased by opening or improving a street or highway; and he must bear the burden in the less common case of a depreciation in value in consequence of the work. It may be added, that when men buy and build in cities and villages, they usually take into consideration all those things which are likely to affect the value of their property, and particularly what will probably be done by way of opening and grading streets and avenues."

The right in this case is statutory, and a pending action, at whatever stage, falls with the statute. There is a marked difference between the creation of a new or cumulative remedy

for an existing right and the creation of the right itself.
That the repeal of a statute conferring jurisdiction or creat-
ing a right of action, without a saving clause, takes away all
right to proceed, and that the repealed act will be considered
as if it never existed, except for the purposes of those actions
or suits which have been prosecuted and concluded while it
was an existing law, has been so often stated in the books
that it has become axiomatic.  It is even held that a repeal
after judgment, but before entry of judgment, works a dis-
continuance of the suit, and that a repeal pending an appeal
to the higher court charged the appellate court with the duty
of declaring the litigation ended without right of further
prosecution.

"This rule holds true until the proceedings have reached
a final judgment in the court of last resort, for that court,
when it comes to pronounce its decision, conforms it to the
law then existing, and may therefore reverse a judgment
which was correct when pronounced in the subordinate tri-
bunal from whence the appeal was taken, if it appears that
pending the appeal a statute which was necessary to support
the judgment of the lower court has been withdrawn by an
absolute repeal." *Vance v. Rankin*, 194 Ill. 625, 62 N. E.
807, 88 Am. St. 173.

"It is well settled that if a statute giving a special remedy
is repealed without a saving clause in favor of pending
suits, all suits must stop where the repeal finds them.  If
final relief has not been granted before the repeal went into
effect, it cannot be after." *South Carolina v. Gaillard*, 101
U. S. 433.

The cases in support of these rules are collected in Cooley,
Constitutional Limitations (7th ed.), 544; 2 Sutherland,
Statutory Construction (2d ed.), 285; Endlich, Interpreta-
tion of Statutes, par. 479, and 22 Am. & Eng. Ency. Law
(2d ed.), 745-752.  As will be seen by reference to these au-
thorities, the rule is applied by the courts in all cases where
the right depends on the remedy, for the rule is universal that
there is no vested right in a particular remedy unless the
remedy is a part of the right itself.

It is contended that the case of *Wooding v. Puget Sound Nat. Bank*, 11 Wash. 527, 40 Pac. 223, is not in point. But we are unable to distinguish it from the case at bar. It is further contended that the amendatory act of 1909 was passed in stealth and has resulted in a trick upon litigants. We cannot inquire into the motive of the legislature. It is enough that it had the power to repeal the old law, and exercised it.

This conclusion makes it unnecessary to discuss the other questions raised by appellants. The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.

ON PETITION FOR REHEARING.
[Decided March 26, 1910.]

PER CURIAM.—We are asked to reverse our former holding in this case, appellants claiming that this case is controlled by certain decisions of the supreme court of the United States not heretofore called to our attention, viz: *Muhlker v. New York & H. R. Co.*, 197 U. S. 544; *Steamship Co. v. Joliffe*, 2 Wall. 450, and *Sauer v. City of New York*, 206 U. S. 536. Under these authorities appellants insist that respondents are liable for the damages claimed even though there had never been a statute giving compensation for damages resulting from an original grade, and that ch. 80 of the Laws of 1909, page 151 (Rem. & Bal. Code, § 7815), is void even if it could be given a retroactive effect. The *Muhlker* case grew out of a condition theretofore unknown to the courts of this country. It had been held by the supreme court of New York that light and air coming from a street could not be taken from the adjacent property owner without compensation by an elevated railroad company. Subsequently one Muhlker acquired certain property fronting on a street over which the track of the railway was constructed. It was laid on or below the grade of the street, but by an act of the legislature the company was authorized to change it to an

elevated road. The company claimed immunity from damages under its original grant of a right of way, and a subsequent act of the legislature. The state court held with the company. This judgment was reversed by the supreme court of the United States. Counsel emphasizes that part of the decision wherein it is said:

"Hence the importance of the Elevated Railroad cases and the doctrine they had pronounced when the plaintiff acquired his property. He bought under their assurance, and that these decisions might have been different, or that the plaintiff might have balanced the chances of the commercial advantage between the right to have the street remain open and the expectation that it would remain so, is too intangible to estimate."

Reference to the *Muhlker* case, and the New York cases referred to therein, shows that the distinction between an original use and an inconsistent street use or added servitude was considered by the court. The court expressly calls attention to the fundamental error of the state court, saying: " . . . the court concluded that it was the state, not the railroads, which did the injury to plaintiff's property," and ordered a reversal because it found the fact to be otherwise.

But if, as counsel contend, the supreme court of the United States has held that the legislature having once spoken so fixes property rights that it cannot thereafter legislate, or if a court is bound willy nilly by a previous decision upon a subject left open by the constitution, the decision is not sound. For no citizen has the constitutional right to insist that courts shall not reverse their decisions upon matters of property rights, or that legislative assemblies shall not change existing statutes when his right of recovery depends solely upon the decision or statute, and his only reason is that he will thereby suffer a pecuniary loss. If it were so, the state, as well as its municipalities, would be helpless to exercise its primary right of sovereignty over established highways and be subject to what Mr. Justice Holmes, in his dissenting opinion, has been pleased to call "the parasitic

right" of the property owner. As we have shown in our first opinion, an original grade is not a taking or damaging within the meaning of the constitution, whereas an added servitude, as an elevated railroad obstructing light and air, or, as has been held in this state, a regrade is.

In the *Sauer* case, the distinction between the position of appellants and that assumed by the respondents is clearly pointed out. After quoting from the New York cases, the court said:

"It would be difficult for words to show more clearly, than those quoted from the opinions [New York Cases] that such a case, as that now before us, was not within the scope of the decisions or of the reasons upon which they were founded. The difference between a structure erected for the exclusive use of a railroad and one erected for the general use of the public was sharply defined. It was only the former which the court had in view. That the structure was elevated, and for that reason affected access, light and air, was an important element in the decisions, but it was not the only essential element. The structures in these cases were held to violate the landowners' rights, not only because they were elevated and thereby obstructed access, light and air, but also because they were designed for the exclusive and permanent use of private corporations. The limitation of the scope of the decision to such structures, erected for such purposes, appears not only in the decisions themselves, but quite clearly from subsequent decisions of the Court of Appeals."

In none of these cases was the right of a city to make an original grade of its streets involved, nor was the right of the legislature to abridge or abrogate a right given by statute considered or questioned. The point we have to consider here, and the governing rule of law, is made plain in the concurring opinion of Mr. Justice Bradley, in *Louisiana v. Mayor of New Orleans*, 109 U. S. 291. He says:

"I concur in the judgment in this case, on the special ground that remedies against municipal bodies for damages caused by mobs, or other violators of law unconnected with the municipal government, are purely matters of legislative policy, depending on positive law, which may at any time be

repealed or modified, either before or after the damage has occurred, and the repeal of which causes the remedy to cease. In giving or withholding remedies of this kind, it is simply a question whether the public shall, or shall not, indemnify those who sustain losses from the unlawful acts or combinations of individuals; and whether it shall, or shall not, do so, is a matter of legislative discretion; just as it is whether the public shall, or shall not, indemnify those who suffer losses at the hands of a public enemy, or from intestine commotions or rebellion. And, as the judgments in the present case were founded upon a law giving this kind of remedy, I agree with the court, that any restraint of taxation which may affect the means of enforcing them is within the constitutional power of the legislature. Until the claim is reduced to possession, it is subject to legislative regulation."

Of this decision Justice Harlan said, in the dissenting opinion in *Freeland v. Williams*, 131 U. S. 421, 423:

"The radical difference between that and the present case is, that the right to sue the city of New Orleans for damages on account of private property destroyed by a mob was given by statute; whereas, the right to claim compensation from a wrongdoer for his illegal conversion of private property to his own use is inherent in the owner, and cannot be taken from him by the state."

In *Steamship Co. v. Joliffe*, a claim arose under the pilotage law of California. After a right of action had accrued, the statute upon which it was founded was repealed. The court said:

"When a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It has become a vested right which stands independent of the statute."

This is the undoubted rule as between individuals when rights have accrued under contract or quasi contract, but it has never been extended so as to preserve a right of action against the public when that right is not based upon con-

tract, but is asserted because it accrued .at a time when the right of sovereignty was temporarily surrendered. A case involving the same principle was before the supreme court of Oregon. *Ladd v. Portland*, 32 Ore. 271, 51 Pac. 654, 67 Am. St. 526. Under an original charter a city was authorized to improve streets at the expense of abutting property owners, but it was provided that, when a street "has been improved under and by virtue of the provisions of this chapter, thereafter such street or part thereof shall not be subject to be again improved, but may be repaired." Thereafter the city was consolidated with others, and a new charter was passed, "all vested rights being reserved." Thereafter the council proceeded to, and did, improve the street and assessed the cost to the abutting property. An action was brought to restrain the collection of the tax, the contract clause of the Federal constitution being invoked. The court held:

"The supreme court of the United States, in interpreting the clause of the constitution now under consideration, has always taken the terms thereof in their ordinary meaning, and holds that the word 'contract,' as used therein, means a voluntary agreement of minds, upon a sufficient consideration, to do or not to do certain things: *Murray v. Charleston*, 96 U. S. 432; *Louisiana v. Mayor, etc., of New Orleans*, 109 U. S. 285 (3 Sup. Ct. 211); *Fisk v. Jefferson Police Jury*, 116 U. S. 131 (6 Sup. Ct. 329). And in our opinion the legislation in question has none of the essential ingredients of such a contract. The power to assess the costs of the improvement of a street upon abutting property is embraced within the sovereign power of taxation primarily in the legislature, but which it may constitutionally delegate to local municipal governments, with or without restraints or limitations; but it is 'never presumed to be relinquished unless the intention to relinquish is declared in clear and unequivocal terms'; *Philadelphia Railroad Company v. Maryland*, 51 U. S. (10 How.) 394. And even then, if the exemption is not supported by some consideration, it may be revoked at any time: *Rector, etc., of Christ Church v. County of Philadelphia*, 65 U. S. (24 How.) 300. . . . The manifest purpose of the provision of the charter under consideration was to define the mode and extent of the power of the council in the

matter of street improvements, and the limitation on the exercise of such power was a mere concession to the citizen, and an act of grace, and not a contract by which the state forever relinquishes the sovereign power of taxation. It was a limitation voluntarily imposed by the legislature upon the powers of the city, which that department of the state government could remove at any time public policy or the interests of the municipality might seem to demand, and bound the state only so long as the statute remained unrepealed."

The further point is made that we have not considered the objection that the city can only grade streets under the terms of an ordinance, and that it has not done so in this case. It is possible that appellants could have enjoined the improvement now complained of, but they did not see fit to do so. They allowed the work to be done and now ask damages. The city has defended this action upon the theory that the work was done within the limits of its authority. This is an admission on the part of appellants of the right of the city, and, on the other hand, the city would be estopped to set up the informality of antecedent proceedings, for damages could only be allowed on the theory that the street work is permanent and is to remain as a menace or depreciating influence upon appellants' property.

It is also urged that we assumed the constitutionality of the act of 1909, without discussing the theory of appellants in opposition thereto. Counsel's whole argument in this behalf is based upon the premise that his property is "taken or damaged." Having said in the first opinion that it was not so taken or damaged, we then considered, and now hold, that the act of 1909 in no way offends against the constitution, and is not for that or any of the reasons suggested by appellants to be held void.

It follows that the constitutional rights of appellants were not infringed by the act of the city, neither under the contract clause of the Federal constitution nor the fourteenth amendment thereto.