[No. 9833.   Department Two.   December 16, 1911.]

## Victoria A. Wood, *Appellant*, v. The City of Tacoma, *Respondent*.[1]

WATERS—DIVERSION—SURFACE WATERS—DAMAGES. There is no liability for increasing the flow of surface water upon the land of another, where it is not cast upon the land in a concentrated and destructive body.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—DAMAGES TO PROPERTY —ORIGINAL GRADES—SURFACE WATERS—DIVERSION. A city not being liable to property owners for damages from the original grading of streets, under Rem. & Bal. Code, § 7815, and surface water being an outlaw and common enemy against which any one may defend himself, a city is not liable for damages from the impounding upon lots of surface waters through the construction of fills in streets and alleys in making initial grades.

SAME. Surface waters discharged through a manhole in a sewer upon lots in a diffused form as it would have flowed in any event do not render the city liable for damages.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—DAMAGE TO PROPERTY— NEGLIGENCE—LIABILITY—SURFACE WATERS. A city is not liable for temporary damages occasioned by negligence in making initial grades in streets and alleys, whereby surface water was impounded upon plaintiff's lots, where the plaintiff had reasonable notice of the city's intention to make the fills impounding the water and opportunity to defend her property by draining off the water or filling the property.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered June 18, 1910, in favor of the defendant, dismissing an action in tort, on granting a non-suit.   Affirmed.

*Govnor Teats, Hugo Metzler, Leo Teats*, and *Ralph Teats*, for appellant.

*T. L. Stiles, F. R. Baker*, and *F. M. Carnahan*, for respondent.

[1]Reported in 119 Pac. 859.

ELLIS, J.—This is an appeal from a judgment of non-suit and dismissal of an action to recover damages consequent upon the grading of, and construction of storm sewers in, certain streets in the city of Tacoma.

About three years before any of the streets in the vicinity of her property had been graded, the appellant bought lots 5 to 10, inclusive, in block 4, of Elsmere addition to Tacoma. Block 4 fronts to the south on 60th street, and is bounded on the east by J street, on the west by K street, and on the north by the alley between blocks 3 and 4. We reproduce a plat from respondent's brief the correctness of which seems not to be questioned, merely for the purpose of illustration and to show the location of streets in relation to the appellant's lots. See next page.

Elsmere addition is in an outlying part of the city. Some houses had been built there and in that neighborhood, apparently before any of the streets were graded or any drainage provided. The general slope of the land in that vicinity is from the south and east to the north and west. Appellant's lots occupy low ground, across which originally the natural drainage of the country to the south and east for a considerable distance flowed. Originally this surface water ran off of appellant's lots and across block 3 to the northwest. At the time when the city began the grading here in question, improvements and filling by the owners of block 3 had obstructed the natural course of the water, so that it ran in a small ditch—it does not appear by whom dug—along the alley to K street, and thence north. There was also a ditch on the southerly side of 60th street which carried a part of the surface water to K street. This was apparently dug after the appellant had purchased and built on her lots; and, also, after that time, the city dug a ditch northward along K street to carry all this surface water to a large drain on 58th street. It appears that these ditches, and also other ditches and drains on this sloping territory, the location and character of which are not made clear by

the evidence, had been made, some of them by the city, and others by the owners of different properties. It seems to be admitted that no permanent system of drainage had been constructed or adopted by the city in this territory when appellant purchased her lots and built her house, nor up to the time of the grading complained of in this action. Up to that time, the drainage, such as it was, was merely temporary in character and construction and adapted to the natural surface of the ground.

In the fall of 1909, the city, by contract, began the grading of the streets and alleys in the vicinity of appellant's property. The work apparently included all of these streets, excepting south 60th street. This grading was the initial improvement of these streets, the first change from the natural contour of the ground. Just before the heavy rains of November, the grading of K street had been completed; and between 60th and 59th streets, it had been necessary to raise the level of the street and sidewalks a little above the natural surface. At the same time, and as a part of the same work, the alley between blocks 3 and 4 was correspondingly raised. There was, therefore, a fill, variously estimated at from a foot to two feet, in the alley in the rear of appellant's lots. This grading of the street and alley filled the ditch in the alley and stopped up the K street end of the ditch on 60th street. At the same time, the city was constructing a storm sewer, from 64th street north along J street to 60th street, and along 60th to K street. ' The heavy rains stopped the work before it reached K street. It does not appear that this sewer was fully completed from 64th street down to 60th street, but it does appear that the pipes were laid at 60th and J street, and that there was a manhole at 61st street and another at 60th street.

In the grading of 61st street, there was a slight cut between K and J streets, and the surplus dirt was used in filling the lots in the vacant block 6, abutting on the north side of 61st street. This whole block was filled to about 18

inches above the street.    When the heavy rains of November
came, the water, following its usual course from the higher
ground from the south and east, being arrested by this
filling of block 6, collected in 61st street and vicinity
forming a pond.   A part of the filling on the lots near J
street washed away, and some of the water which had col-
lected in 61st street flowed into the unfinished storm sewer,
and out again through the manhole at 60th and J street,
thence down 60th street onto appellant's lots, and was there
retained by the filled grade of K street and of the alley in
the rear of her lots, causing the injury complained of.

It is fairly deducible from the whole of the evidence that
little if any more water was thus collected upon appellant's
lots than would have been the case had no water been al-
lowed to collect in 61st street and had no storm sewer been
constructed in J street.   The water which came from 61st
street would simply have collected in the first instance in
60th street and upon the appellant's lots.   It was merely
delayed in its progress by the filling in of block 6, and
reached appellant's lots possibly a little later than other-
wise by going around the block instead of crossing it diag-
onally.   But even if there was an increase in the amount
of water, it has been held not to create a liability unless the
water be cast in a concentrated and destructive body upon
the land.   *Davis v. Crawfordsville,* 119 Ind. 1, 21 N. E.
449, 12 Am. St. 361; *Jordan v. Benwood,* 42 West Va. 312,
26 S. E. 266, 57 Am. St. 859, 36 L. R. A. 519; *Hume v.
Des Moines,* 146 Iowa 624, 29 L. R. A. (N. S.) 126; *Miller
v. Morristown,* 47 N. J. Eq. 62, 20 Atl. 61.

The real cause of the water collecting upon appellant's
lots was the raising of the grade of K street and the alley
back of these lots, which stopped the drains in 60th street
and the alley, thus impounding the water.   The evidence
fairly indicates that, but for this grading, the water would
have passed off as formerly.   The appellant herself makes

this plain. With reference to the old drains in the alley in 60th street and K street, she testified:

"Q. This is 60th street, as I understand you; what do you call this (referring to Identification A). There was a drain which you say the city made some time down there, and opened it down there in 60th street? A. Yes. Q. Was the ditch in K street at that time the same kind of a drain? A. No, it was a box. Q. Was it open on K, on this side? A. No they covered it up. Q. How far does it run? A. Run down as I understood down to 58th; they had a big ditch down 58th. Q. If it was not for putting that drain in there by somebody by Mr. Wright or somebody, all of this water would have come across your place? A. Yes. Q. So far as that is concerned, that relieved you some? A. Yes, after they graded the street last winter, they put the dirt in here (indicating on Exhibit). Q. That is what you complain of? A. Yes, I complain of them stopping the ditches and the natural drain. Q. Is it not a fact that the natural drain went down across the lots further? A. No, it went through the alley, not through Hadland's lots at all."

It is now established law in this state that damages cannot be recovered for consequential injuries to private property occasioned by the original grading of streets and alleys. The dedication of streets and alleys to the public use implies an agreement of the dedicator and his successors in interest that the city may establish grades and improve the streets and alleys thereto in aid of such use. *Ettor v. Tacoma*, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061; *Fletcher v. Seattle*, 43 Wash. 627, 86 Pac. 1046, 88 Pac. 843; Laws 1909, p. 151, § 1 (Rem. & Bal. Code, § 7815); 4 Dillon, Municipal Corporations (5th ed.), § 1684.

It is also the settled doctrine in this state that surface water caused by the falling of rain or the melting of snow, is to be regarded as an outlaw or common enemy against which every proprietor of land may defend himself, even if in consequence of such defense injury result to others. As to surface waters, this court has definitely adopted the rule

of the common law, as distinguished from the contrary rule of the civil law. *Cass v. Dicks*, 14 Wash. 75, 44 Pac. 113, 53 Am. St. 859; *Harvey v. Northern Pac. R. Co.*, 63 Wash. 669, 116 Pac. 464; Gould, Waters (3d ed.), § 265; 30 Am. & Eng. Ency. Law (2d ed.), p. 330.

From the adoption by this court without qualification or restriction of these two doctrines, namely, that a municipal corporation is not liable for injuries consequent upon the initial grading and improvement of its streets, and that surface water is a common enemy against which any one may defend himself, arises the corollary that a city is not liable in damages for injuries to private property by the collection of surface water thereon, caused by the initial grading or improvement of its streets and alleys. Injuries resulting from the reasonable exercise of a legal power are consequential, and cannot be made the basis of recovery. Such is the rule in all those jurisdictions which have adopted without modification the common-enemy doctrine of the common law.

"In the jurisdictions which adopt the common law rule, it is held that the rule applies fully to municipal or quasi-municipal corporations as to individuals, and that such a corporation does not incur any liability if in the improvement of its streets or highways it prevents the flow of surface water from adjacent lots; and the same has been held true with regard to the improvement of city lots owned by a municipality. On the other hand, it has been held that a landowner may, by erections or obstructions on his own lands, prevent the flowage of surface waters from a highway upon his land." 30 Am. & Eng. Ency. Law (2d ed.), pp. 331-332.

See, also, 4 Dillon, Municipal Corporations (5th ed), §§ 1732, 1733; Elliott, Roads & Streets (3d ed.), § 556; Gould, Waters (3d ed.), § 269.

There is an exception to this rule of nonliability, which, though not indorsed by some of the courts, and which we do not find has often been applied to the initial grading of streets, we nevertheless believe to be sound in any case. A

city may not gather up surface water and discharge it upon land in a concentrated volume to the injury of the land without liability, whether the water be such as naturally would have flowed onto the land or not. The reason is that when collected and discharged in considerable volume upon the land at a given point it may erode and wash channels in the land thus becoming very destructive and injurious. *Johnson v. White*, 26 R. I. 207, 58 Atl. 658, 65 L. R. A. 250, and note ·to p. 262. The appellant contends that the evidence brings this case within the exception. But we think not. It fails to show that the water was discharged upon the appellant's lots in a concentrated volume. It escaped from the manhole in the street, and flowed upon the appellant's land in a diffused form, as it would have done in any event. In such a case, the mere fact that the water was concentrated in its course to appellant's land does not create a liability which would not otherwise exist. *Clay v. St. Albans*, 43 West Va. 539, 27 S. E. 368, 64 Am. St. 883.

There remains to be considered the question of negligence. It must be conceded that a municipal corporation, like an individual, is liable for injuries resulting from the negligent exercise of legitimate powers. There is no evidence whatever that, on the completion of the storm sewer on J and 60th street and the new drain on K street, they did not furnish adequate drainage for this district, including appellant's property; nor was there any evidence that, if the improvement had been completed before the rainy season, any injury would have occurred. The evidence does not make a case of improper or negligent final construction, but merely shows a failure to provide adequate temporary drainage during the progress of the work and the delay made necessary by the rainy season. There is no negligence where there is no violation of duty. There was no absolute duty on the part of the city to furnish temporary drainage for appellant's lots pending the grading and placing of drains in K street and the construction of the storm sewer on J

and 60th streets; nor was it bound to do this if it would entail expense or cause any considerable interference with the prosecution of the work of grading the streets after it had been undertaken, or if it was incompatible with the plan of improvement adopted by the city. Nor was the city bound to do this at all, if the appellant had sufficient notice of the contemplated improvement of the streets, and the manner in which the work was to be done, to have enabled her to protect her lots by providing drainage herself, or by filling the lots, as the evidence shows she has since done. The fact that the old temporary ditches had been dug in the ungraded alley and in the ungraded 60th street, either by the city or with its permission, can make no difference. The city did not thereby abdicate its right to establish an initial grade for its streets and fill them to that grade even if in so doing it filled these ditches. Any other view would make the city liable to some one for some inconvenience every time it sought to grade a street for the first time, and thus render the statute nugatory. The rule in such a case which appeals to us as reasonable, and especially as in consonance with our statute which does not permit recovery for damages for injuries resulting from the reasonable exercise of the power to grade streets for the first time (Rem. & Bal. Code, § 7815) is declared by the supreme court of Iowa, in a case cited by appellant, as follows:

"The true rule here, as we understand it, is that, as the city had power to grade and gutter its streets, it is not liable for defective plans, for in adopting them it acts in a judicial capacity. But it is liable if it negligently carries out such plans, or if, without the adoption of any plans, it proceeds in a negligent manner to make embankments or fills, to the injury of an abutting or adjoining proprietor. As applied to the facts of the case, the city was not liable because of its establishment of grades for West Walnut and West Sixteenth streets, because its act in so doing was either legislative or judicial in character; but in bringing the streets to these grades established, it was bound to the exercise of ordinary care and prudence, and if it unneces-

sarily or negligently filled ditches and drains in West Sixteenth street, and thus cast surface water back upon plaintiff's lots, without notice to her, and without her knowledge, and without giving her a reasonable time to bring her lots to grade, the city is liable, not because of defective plans, but by reason of negligence in doing a purely ministerial act; that is, of bringing the streets to the established grade, and, in so doing, filling the ditches and drains for the escape of surface water without providing an escape, either temporary or permanent, for the surface water. Moreover, there was evidence tending to show that it so filled the streets as to collect surface water and discharge it upon plaintiff's lot. As plaintiff had the right to fill her lot by bringing it to the established grade, doubtless defendant was not obliged to provide permanent culverts, drains, or bridges, although that point we do not now decide. If, after her property is brought to grade, such culverts, ditches, or drains should be constructed, a question may then arise as to defendant's duty in the premises." *Hume v. Des Moines, supra,* 29 L. R. A. (N. S.) 127-136.

The evidence shows that the appellant had notice of the city's intention before the old ditches were filled. She says she protested to the city officials, and in fact that she brought suit against the city in an attempt to stop the grading of K street. She made no attempt to protect her lots, either by filling, diking, or by opening the old drains, which the city would doubtless have permitted after the drain in K street was completed. This was before the rains set in. The evidence sufficiently shows that this would have been permitted, since the city, in about two days after the first accumulation of water, as appellant admits, "drained it out the best they could," by digging a ditch in the alley; and in the spring she says, "They drained it all out and finally put in a box." The testimony of both the appellant and her husband shows that, neither before the fall rains nor after, did they themselves do anything whatever, either to protect the property from water or to drain it off after it accumulated. Surface water being a common enemy, they had the same right to protect their property from it as the

city had to protect its streets. 4 Dillon, Municipal Corporations (5th ed.), § 1733.

"It is clear that there is no liability on the part of a municipal corporation for not exercising the discretionary or legislative powers it may possess to improve streets, and, as part of such improvement, to construct gutters or provide other means of draining for surface-waters, so as to prevent them from flowing upon the adjoining lots. And even when the work of grading the streets has been entered upon, there is not ordinarily, if ever, any liability to the adjoining owner arising merely from the non-action of the corporation in not providing means for keeping surface-waters from property situate below the established grade of the street. There are, indeed, cases which go further, and assert that there is no such liability where, in making improvements upon streets or elsewhere, authorized by law, surface-waters are purposely turned from one's own land to that of another,— from the street directly upon the adjacent property owner." 4 Dillon, Municipal Corporations (5th ed.), § 1734.

It would be worse than useless to attempt to harmonize the wilderness of decisions from other states on the questions here involved. Some of them follow the common law rule, others the opposite rule of the civil law, and still others a modified form of the one or the other. So far as we are able to discover by a careful reading of the authorities cited by the appellant, they nearly all arose upon a change of an established grade and not upon an initial grading of the street. In none of them was there a statute involved such as we have here. Manifestly they would not apply under the provisions of our statute which expressly limits recovery to injury by changes of grade. Moreover, they differ widely in their facts from the case before us. In view of the statute as construed in *Ettor v. Tacoma, supra,* and the rule as to surface water as announced in *Cass v. Dicks, supra,* we are compelled to hold that the evidence here fails to make a *prima facie* case against the city. The judgment is affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.