[No. 11064. Department One. October 9, 1913.]

WILLIAM JONES et al., Appellants, v. A. J. GILLIS et al., Respondents.[1]

MUNICIPAL CORPORATIONS — STREETS — CHANGE OF GRADE. Where street grades were established in 1878, and made of record and never changed, and improvements by pavement were made in 1904 on the grades established, the fact that the city between 1878 and 1904 permitted use of the streets in their natural condition and improved the same by minor temporary repairs until 1904, does not show a change of grade or adoption of the natural condition as the grades of the street; hence the city will not be enjoined from compelling property owners to reconstruct sidewalks constructed with notice of the true grade and voluntarily placed ten or eleven inches higher than grade in violation of the city ordinances (CHADWICK, J., dissenting).

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered September 11, 1912, dismissing an action for an injunction, after a trial to the court. Affirmed.

*T. P. & C. C. Gose*, for appellants.

*John F. Watson*, for respondents.

MOUNT, J.—This action was brought by the plaintiffs to enjoin the city of Walla Walla from causing the sidewalks adjacent to the plaintiffs' property to be removed and new sidewalks laid at the expense of the owners of the property.

[1]Reported in 135 Pac. 627.

The cause was tried to the court without a jury, and at the conclusion of the evidence, the trial court dismissed the action. The plaintiffs have appealed.

The facts in the case are as follows: The appellants are the owners of lot 6, block 13, of the original town of Walla Walla. This lot has a frontage of 60 feet on Alder street and a frontage of 120 feet on Second street in said city. A three-story brick building is located upon this lot. Between the years 1875 and 1878, the city of Walla Walla instructed its surveyor to survey these streets and establish grades on the same, and to prepare profiles thereof. This was accordingly done, and in the year 1878 the profiles of the grades of these streets were adopted by the city council and filed in the office of the city clerk. Thereafter ordinances were passed by the city prohibiting the construction of sidewalks except as provided for in the ordinances, and requiring sidewalks to be built upon proper grades. An ordinance was also passed requiring the city surveyor to set grade stakes and furnish information to property owners desiring to construct sidewalks around their property. The streets upon which this property abutted were used in their natural condition, and minor improvements were made thereon until the year 1904, when these streets were paved and improved with hard surface paving. In the year 1900, the appellants constructed a cement sidewalk along Second street in front of their property, and in the year 1903, a similar walk was constructed along Alder street. This was done at the private expense of the appellants. The grades of these streets were applied for prior to the construction of these sidewalks, and were furnished by the city engineer. But the appellants did not build their sidewalks upon the grades, but constructed the same some ten or perhaps twelve inches above the grades as established in 1878.

When the streets were paved in 1904, they were paved upon the established grades. The sidewalks in front of the appellants' building on the two streets named were extended four feet into the street. This portion of the sidewalks is six inches

above the gutter, about level with the crown of the street, and four feet wide. This strip of sidewalk four feet wide extends around the sidewalks built by the appellants, so that the sidewalks built by them are some ten or eleven inches higher than the sidewalk built by the city upon the grades. In the year 1912, the city commissioners of the city of Walla Walla served notice upon the appellants to construct these sidewalks to conform to the grades of the streets. This meant the destruction of the walks previously built by them and the construction of a new walk ten or twelve inches lower than the present walk, which would interfere somewhat with the access to the appellants' building. The appellants refused to construct the sidewalk. Thereupon the city commission passed an ordinance creating an assessment district for the purpose of reconstructing these sidewalks around the building upon the grades of the streets as improved, at the expense of the abutting property. This action was thereupon brought to restrain the city from doing the work.

The principal contention of the appellants is that the city of Walla Walla, having permitted the use of the streets in their natural condition for a long period of time, and having improved the same by minor repairs thereon, had adopted the natural condition of the streets as thus improved as the grades thereof; and that any change by the city of these grades as used was a change of the grades which made the city liable for damages to the abutting property. In the case of *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859, at page 271, we said:

"It is now established law in this state that damages cannot be recovered for consequential injuries to private property occasioned by the original grading of streets and alleys. The dedication of streets and alleys to the public use implies an agreement of the dedicator and his successors in interest that the city may establish grades and improve the streets and alleys thereto in aid of such use. *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061; *Fletcher v. Seattle,* 43 Wash. 627, 86 Pac. 1046, 88 Pac. 843; Laws 1909, p. 151,

§ 1 (Rem. & Bal. Code, § 7815) ; 4 Dillon, Municipal Cor-
porations (5th ed.), § 1684."

In *Sargent v. Tacoma*, 10 Wash. 212, 38 Pac. 1048, this
court said:

"But we are satisfied that the establishment of street grades
within the meaning of the act of 1883, prohibiting the changes
of grades so as to render the raising or lowering of buildings
necessary, without the pre-payment of damages (Gen. Stat.,
§ 759), contemplated either a grade established by the actual
improvement of a street to a grade, or the formal adoption
of a grade by ordinance or resolution. There is good author-
ity for the latter proposition. *Stewart v. City of Clinton*,
79 Mo. 603; *Mattingly v. City of Plymouth*, 100 Ind. 545;
*Nebraska City v. Lampkin*, 6 Neb. 27."

In the present case it is conceded that, in the year 1878,
the city by resolution adopted the grades upon which this im-
provement was finally constructed. There is some contention
on the part of the appellants that because the city had author-
ized fills to be made in parts of the streets and some macadam
to be placed thereon, that that was the actual establishment of
the grades. The evidence is clear to the effect that these im-
provements were merely temporary so that the streets might
be used in their then condition. The evidence is plain that
the improvements made upon the streets prior to the laying of
the hard surface pavement in 1904, was merely temporary,
and without any idea of changing the grades which had there-
tofore been established. This being true, the mere fact that
the streets were not permanently improved until 1904, cannot
be held to have been a change in the grades. *Rettire v. North
Yakima*, 33 Wash. 80, 134 Pac. 699.

There was some evidence introduced in this case to the effect
that the city council in 1891 passed a resolution raising the
grade on Second street six inches. The record, however,
shows that the city engineer advised the council that the
crown upon certain streets should be raised. The city council
authorized the city engineer to make a profile showing the
streets to be so raised and report the same to the council.

This appears never to have been done. The evidence shows that there was no intention on the part of the city council to change the grades upon which the sidewalks or the gutters in the streets should be made. It is plain, we think, that there was no intention on the part of the council to change the grades of the streets from the grades established in 1878. A careful reading of the record convinces us that the great weight of the evidence is to the effect that the grades of these streets were of record; were established by resolution of the city authorities in 1878; that they have never been changed; that the improvements upon the streets by the pavement thereof in 1904 was upon the regular established grades; and that the sidewalks around the appellants' building were constructed with notice and knowledge of the true grades, and were voluntarily placed ten or eleven inches higher than the true grades, in violation of the ordinances in force in the city at that time. We are satisfied upon the facts in the case that the trial court properly denied the injunction in this case; and that the city is authorized, under the law and the authorities hereinabove referred to, to proceed to require the sidewalks upon the streets around the appellants' building to be made to conform to the true grades of the streets as improved by the pavement of 1904.

The judgment is therefore affirmed.

CROW, C. J., PARKER, and FULLERTON, JJ., concur.

CHADWICK, J. (dissenting)—I do not understand all of the physical facts to be as found by Judge Mount, but am willing to accept his statement as to the records of the city of Walla Walla, except in this: that profiles of the grades of these streets were adopted by resolution in 1878. The record is that a profile had been prepared for Alder street in 1875, and for Second street in 1878. These were "upon motion adopted." No grade was ever formally established, and it is not plain to me that it was the intent of the city to adopt more than a subgrade when it adopted the profile; a critical consideration of the facts would indicate that it did not. The

city has offered testimony to prove that during all these years the crown of the streets might have been, and was, indeed, above such grade; that the elevation of the crown ranged from eight to twenty-four inches above the gutter as the city engineer saw fit to have it, depending upon the width of the street and the material used for finishing the street. The assumption that the profile, which is a single line, was intended to represent the gutter line, is not supported by any testimony worthy to be called evidence. The real question is whether paper profiles—they were not grades—made in 1875 and 1878, are controlling over a grade adopted by the public and acquiesced in by the city. This question is not discussed by Judge Mount, for he finds that no grade has ever been so adopted. The majority finds that the work done on the streets prior to the laying of hard surface pavements was of a temporary or casual nature, and without design or intent to abandon the old profile. If this is not true, if the city by its conduct has estopped itself to assert the integrity of the old profiles (what they are it must be remembered, rests not in what may be gathered from an inspection of the records, but what the present city engineer and his predecessor say the profiles mean), then the majority opinion is wrong.

The city of Walla Walla is located on a plain that is practically level. It has a population of approximately 20,000. With slopes for drainage, the grades are not so great as to prove inconvenient, and generally are not perceptible from block to block. No actual physical grade was ever established. The city has been built with reference to the natural grades, which the council has permitted to exist since the place was incorporated in 1862. Large business blocks have been built and vast sums of money have been expended by the people, while the city has acquiesced in the conduct of its citizens and benefited by their enterprise. The property of the plaintiffs is a three-story brick building and near the business center of the city. More than this, the city has improved the streets. They were ploughed and the material

taken from more than one basement excavation was put upon them and paid for by the city. The city maintained a rock crusher through which the material was put before it was put upon the surface. Curbs and permanent sidewalks have been put in. There is nothing lacking. The streets were treated just as all streets have been treated in cities before hard surface pavements are laid. They were improved as roads to the width of the streets, with proper crown and drainage gutters. Having in mind these facts, to hold that the city has a right to destroy or damage abutting property is to hold that no grade is ever established until a hard surface pavement is laid down.

The point is made by the city all the way through the case that, although the streets may have been worked at public expense, they were not macadamized. Whether they were macadamized, within the technical and literal meaning of that term, may be doubted. They were macadamized in the popular sense. They were improved with crushed rock and were what any layman would call macadamized streets. But the law requires no such thing. It is enough if the city has by its conduct led the citizens to adopt the natural grade of the street and to make expenditures with reference thereto.

To regrade a town or city in such a way as to require a lowering of the floors of business blocks or to compel the necessity of putting in steps is an unwarranted intrusion upon the right of the citizen. His right should at least be equal to the pride of opinion of a city engineer, and, if equal, his right should prevail. There is nothing sacred about grade lines, especially so when all men of experience, as well as courts, agree that two surveyors will rarely run lines or mark elevations that harmonize when put upon the ground.

Let the situation of the parties be reversed. After fifty years use and improvement such as the local conditions required (hard surface paving is a modern conception in our smaller cities), will any one doubt that the city could have compelled a property owner who was about to erect a new

building, to conform his sidewalks to the grade established by actual user? To put this question is to answer it. If, in the supposed case, the citizen had defended upon the ground that there had been a formal fixing of the grade or an informal attempt to fix the grade by the council, he would have found himself in the same situation that Horlacher was in when he undertook to compel the state to elect whether it would rely upon prescription or a legal establishment of a highway by the commissioners. In that case the court refused to compel an election, and this court sustained its holding on the ground "the fact of existence of a public highway may be established by any competent evidence, and there is no distinction in the validity of either method of the establishment of a public highway in this state." *State v. Horlacher,* 16 Wash. 325, 47 Pac. 748.

There is one suggestion in Judge Mount's opinion that is misleading if not explained, and that is, that at the time plaintiffs built the sidewalk around their building, they were furnished grades corresponding to the present grade of the paved street. This, standing alone, would seem sufficient to warrant the court in holding that there was no equity in the plaintiffs' case, but the record shows that if a sidewalk had been put in at the time, according to the grade given on the present grade of the street, the sidewalk would have been from four inches to one foot below the gutter. Again, if plaintiffs have any legal right to insist upon the adopted grade, they had it then, and having it, equity should not deny them a present remedy because they acted upon their legal right. My argument is sustained by reference to the decisions of this court holding that a city may be estopped and that streets and roads may be established by prescription. That the grade of a street may become fixed by the lapse of time and the conduct of the municipality, is well established. The case of *Cambridge v. County Commissioners,* 125 Mass. 529, is in point.

"Walden Street, in Cambridge, was laid out in 1861 by the city council, and the order of location established the grade

at which it was to be constructed. Within two years, the street was constructed and opened to the public travel by the city, and it has ever since been so used; but it was not then graded so as to conform to the grade established in the order. In the early part of 1877, some sixteen years after the street was laid out, the existing grade of the street was made to conform to the order of location."

It was held that a grade had been established so that the street could not thereafter be put on the paper grade without compensating the owner in damages.

In *Blair v. Charleston*, 43 W. Va. 62, 26 S. E. 341, 64 Am. St. 637, 35 L. R. A. 852; *Aldrich v. Board of Aldermen of Providence*, 12 R. I. 241; *Folmsbee v. City of Amsterdam*, 142 N. Y. 118, 36 N. E. 821; *Akron v. Chamberlain Co.*, 34 Ohio St. 328, 32 Am. Rep. 367; *Harman v. Bluefield*, 70 W. Va. 129, 73 S. E. 296, there were no paper grades established, but the courts affirmed the rule that a grade might be established by adoption. There is no difference in principle, if a physical grade can be adopted without the formality of a paper grade, a paper grade once adopted can be abandoned.

"While we recognize the general rule to be, that no liability on the part of a municipality for injury to abutting property, by reason of the improvement of a street, exists where such improvement is properly made, yet this rule is subject, as we have seen, to the exception, that where abutting property is improved with reference to an existing street, so graded or improved under the authority of the public agents having control thereof, as to indicate, fairly and reasonably, permanency in the character of the street improvement, a liability is cast upon the city or village for injuries resulting from subsequent changes." *Akron v. Chamberlain Co.*, 34 Ohio St. 328, 32 Am. Rep. 367.

Under these authorities I have no hesitation in saying that, after the lapse of fifty years, during which a street in the business section of a city is used and the street is given such care as the necessities of the situation require, at the expense of the public, and during which time the abutting property has no doubt changed hands many times, has been bought and

sold with reference to the physical grade, that the city should not be heard to say that the grade is not a permanent grade and that it is not bound thereby.

The case of *Sargent v. Tacoma,* 10 Wash. 212, 38 Pac. 1048, cited in the majority opinion, admits that a grade may be established by user and improvement, while *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859, and *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, have no application to the facts as disclosed by the record in this case.

If there was any reason in law or equity, if the convenience of the citizens was appreciably enhanced by adopting what the engineer says the old paper grade was or is, I would subscribe to the opinion of the court; there being none, plaintiffs are entitled to invoke the equity relied on and the city should be enjoined. Plaintiffs are not captious or arbitrary, and until the opinion of the court was written, I had thought, were not unreasonable. They do not stand alone. Others are the victims of the city's change of policy and conduct. The engineer who superintended the improvement testified as follows:

"Q. You were in Walla Walla at the time the new pavement was made? A. Yes, a part of the time, most of the time I was out of the city. Q. You know, do you not, that it was a matter of common surprise that excavations for the paving of the streets were going so deep? A. I do not recall that. It may have been, but it was not to me. Q. As a matter of fact you know that the grading when it was done carried the surface of the finished pavement much below the old existing level of the street all over town? A. Yes, sir, all over the business section."

The judgment should be reversed.

### ON PETITION FOR REHEARING.
[*En Banc.* January 16, 1914.]

PER CURIAM.—Upon a rehearing of this case by the court *En Banc,* the majority still adhere to the original opinion, and for the reasons there given, are of the opinion that the judgment should be affirmed.