[No. 12046. Department One. January 8, 1915.]

THE CITY OF SPOKANE, *Appellant*, v. LADIES' BENEVOLENT SOCIETY et al., *Respondents.*[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — CHANGE OF STREET GRADE—LIABILITY—PAPER GRADE. Where a "paper" grade had not been acted upon and no physical grade had been made, a city is not liable for damages to unimproved abutting property by reason of a change of the grade.

SAME—RELIANCE ON "PAPER" GRADE—IMPROVEMENTS — ESTOPPEL. Where a city has adopted a "paper" grade of one of its streets and, pending a physical grade thereof, an abutting lot owner has improved his property with reference to such "paper" grade, he may recover damages as for a change of grade, his right being referable to the doctrine of estoppel.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered March 10, 1914, in condemnation proceedings, upon the verdict of a jury awarding damages for a change in a street grade. Modified.

*H. M. Stephens, Wm. E. Richardson, Ernest E. Sargeant,* and *Dale D. Drain,* for appellant.

*Skuse & Morrill,* for respondents.

CHADWICK, J.—The grade of Calispel street, in the city of Spokane, was established by ordinance in the year 1889. The streets were not brought to a physical grade, although some property has been improved with reference to what we

[1]Reported in 145 Pac. 443.

will call the paper grade. In 1910, the city, intending to grade the street, passed an ordinance reestablishing the grade of the street. The former paper grade was materially changed. The city then brought an action to condemn and assess the damages, if any, caused by the grading of the street to the grade line established by the later ordinance. Respondents are owners of abutting lots.

This court has held:

"In the absence of some statute, a municipal corporation is not liable for damages resulting from the original grading of a street, alley, or avenue, either within the original corporate limits or in any addition thereto. The power to establish grades is incident to its charter, and is implied from the dedication." *Ettor v. Tacoma*, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061.

See, also, *Schuss v. Chehalis*, 82 Wash. 595, 144 Pac. 916, and authorities cited therein; *Seattle v. McElwain*, 75 Wash. 375, 134 Pac. 1089; *Muller v. Great Northern R. Co.,* 75 Wash. 631, 135 Pac. 631.

It is not contended by the corporation counsel that the city is not liable for the damaging of property that has been improved by the owner in faith of the first or paper grade. "The question," as stated by counsel for respondents, "is whether a city of the first class can establish and fix the grade of a street by an ordinance duly enacted, and thereafter change such grade, and grade the street to the reestablished grade to the damage of abutting property, and not be liable to the owners of such property for the damage so caused." Or, in other words, is a paper grade unacted upon by the city a grade established, or an initial grading, within the meaning of our own cases so as to prevent a change thereof without meeting the damages to unimproved property under art. 1, § 16 of the constitution, which provides that private property shall not be taken or damaged for a public use until the damages have been ascertained and paid.

It cannot be denied that a grade is in a sense established when it is defined by ordinance, but we cannot make ourselves

believe that it is sound doctrine to hold that a city having an original and continuing power to establish grades and to grade streets in conformity therewith, Abbott, Municipal Corporations, § 810, should be held to a rule of too strict interpretation.

If no ordinance had been passed in 1889, the city would not have been foreclosed of its right to make an original grade without payment of the resultant damages, notwithstanding the lapse of time or the improvement of the property. *Mattingly v. Plymouth*, 100 Ind. 545. For it is held, and properly so, that the holding and improvement of the property is subject to the legislative will of the city as to the time when a street shall be graded; that this will not be controlled by the courts, and consequently there can be no estoppel because of the lapse of time, either to the burden of the city or to the benefit of the property owner.

The right to recover damages at all against a city for grading or regrading a street rests upon the theory that there is a physical invasion. Until there has been a physical invasion, therefore, it would be more logical to hold that the mere adoption of a paper grade would not exhaust the right of the city to redefine the grade line so as to make a grade that will better serve the whole public, compensating only those who have built upon or improved their property and who are damaged by the change. Compensation being allowed, not upon the theory that the city cannot change the grade of a street—for that it has ample statutory authority to do—but upon the ground of estoppel, or, as Judge Dillon says, upon the "basis of natural justice." Dillon, Municipal Corporations (5th ed.), § 1865.

The cases involving the exact question here presented are few. In fact, we have found none which can be called *quatuor pedibus* with it. There are, however, expressions in the books which indicate that the subject has been considered.

It has been quite generally held that the mere establishment by ordinance of a paper grade changing an existing grade

or establishing an original grade in those jurisdictions where damages are allowed therefor will not give a right of action. The right rests inchoate until such time as the city acts upon it. A paper grade gives no right of action. *Clark v. Philadelphia,* 171 Pa. St. 30, 33 Atl. 124, 50 Am. St. 790. Damages for the grading or change of grade are not given until the actual operation on the ground. *Plan 166,* 143 Pa. St. 414, 22 Atl. 669.

In New Jersey, awards for damages flowing to those who had built upon their land, because of changes or alterations in street grades, are made under certain statutes similar in form and purpose to Rem. & Bal. Code, § 7874 (P. C. 77 § 1165). It is said in *State etc. v. Sayre,* 41 N. J. L. 158:

"As the claim of the land owners can stand on these statutes alone, it is plain that those who had no 'house or other building' erected on their land at the time of the alteration of grade, have no legal right to compensation, and the awards made to them must be set aside, unless some of the reasons alleged for the non-interference of this court be sufficient."

A consideration of these and other cases impelled Mr. Abbott to say: "The mere establishment of a grade on paper prior to the one which was consummated by physical construction cannot be considered." 2 Abbott, Municipal Corporations, p. 1917, note 584.

The case, or rather the observations of the judge who wrote the case, which most nearly touches this case, is *Manning v. Shreveport,* 119 La. 1044, 44 South. 882, 13 L. R. A. (N. S.) 452:

"The adoption of a (paper) grade may be said to fix the liability of the property affected by it to future damage, but the weight of authority is to the effect that such damage is not recoverable until actually inflicted, and hence that it is the owner at the time who may recover it. A municipality may not be able to grade all of its streets at one time, but it has the undoubted right to declare in advance what the

grade shall be, and though, quoad property then existing and affected or to be affected, the liability to damage is thereby imposed, and the right to recover it may be said to attach to the property, to be exercised when the damage shall be actually inflicted, *it cannot be said that any* such liability is imposed, or that any such right attaches, with respect to property which is then nonexistent. In other words, by the adoption of a grade, to be thereafter established, the municipality fixes the status of an existent lot as property which must sooner or later be affected by the actual establishment of the grade so adopted, and the right to recover for such damages as it may sustain, though inchoate at the moment, becomes perfect when the damage is actually inflicted, and may be exercised by the then owner of the lot. But, if the lot be not improved when the grade to be actually established in the future is adopted, no liability for damage to improvements is imposed, and no right of recovery with respect thereto, whether inchoate or otherwise, is created. Under such circumstances, if the then nonexistent improvements are subsequently, and at the option of the owner, placed upon the lot, they come into existence subject to conditions already established and of which the owner of the lot has notice, and he must govern himself accordingly."

The supreme court of Utah has held that an abutting lot owner can recover consequential damages for an original grade of the street, but it is worthy of notice that the writer of the opinion in the case of *Kimball v. Salt Lake City*, 32 Utah 253, 90 Pac. 395, 125 Am. St. 859, 10 L. R. A. (N. S.) 483, where many cases were considered, found the rule in some jurisdictions to be,

"It is likewise true that in some states the law is still to the effect that consequential damages are recoverable only where one established grade is changed to another, and that until the grade is actually established and acted upon, the municipality is not liable for consequential damages."

This finding seems apropos, inasmuch as we hold that consequential damages are recoverable where a grade once made is changed. It is our opinion, as it was the opinion of the writer, gathered not so much from apt words and ex-

pressions as from the logic of the cases, that a grade is
not actually established when considered in connection with
statutes or constitutions allowing damages for a "taking or
damaging" until it is "acted upon." The logic of our former
decisions is that there can be no taking or damaging of
abutting property subject to an initial grade, and where the
owner of an unimproved lot is in the same position he would
have been in had the city never passed the ordinance of 1889,
he is in no position to assert or claim damages for the actual
grading of the street.

· Coming now to the cases relied on by respondent: *Sargent
v. Tacoma*, 10 Wash. 212, 38 Pac. 1048; *Rettire v. North
Yakima*, 75 Wash. 143, 134 Pac. 199; *Jones v. Gillis*, 75
Wash. 688, 135 Pac. 627; *Thorberg v. Hoquiam*, 77 Wash.
679, 138 Pac. 304. The *Sargent* case does not touch our
question. The court had under consideration a statute—
Rem. & Bal. Code, § 7874 (P. C. 77 § 1165)—protecting
owners who had built with reference to a grade established
by actual improvement of a street to a grade, or by reference
to a grade formally adopted by ordinance. It is no broader
in its holding than the statute it construes. The cases cited
in the *Sargent* case all go to the one proposition, that a
grade established, either by ordinance or user and acted upon
by the property owner, is such an establishment as will com-
pel a city to meet the resultant damages.

In *Stewart v. Clinton*, 79 Mo. 603, the street had been
graded.

The case of *Mattingly v. Plymouth*, 100 Ind. 545, goes
primarily to the degree of proof required to show the estab-
lishment of a grade. In so far as it bears on this case, it is
consistent with our reasoning:

"As the initial point in the appellant's case, it was neces-
sary to show the existence of a duly established grade by the
city authorities at the time the improvements were made;
that the improvements were made with reference to a grade
so established, and that the city was proceeding to change

the grade so established, to the appellant's damage, without the assessment and tender of the damages so occasioned. This was neither averred in the complaint nor shown in the evidence, and so both are fatally defective."

The case of *Nebraska City v. Lampkin*, 6 Neb. 27, also goes to the degree of proof required to show an established grade and seems to hold, inferentially at least, that a grade is not established until it is defined and "worked." In the *Rettire* case, the grade had been established and the street improved under an ordinance passed in 1903. The only question before the court was whether the city was bound to follow the elevation of the curb when later fixing a grade for sidewalks. In the *Jones* case the fact, as found by the court, was that there was a paper grade; that it was the only grade and that the plaintiff Jones had made his improvements in defiance of it. It is the antithesis of the case of the claimants in this case, who have made improvements with reference to the paper grade, and is, therefore, an authority sustaining their right to recover damages as for a change of grade.

In the *Thorberg* case, the city council by resolution had "adopted" the natural level of the land as a grade and had improved the street at the expense of the abutting property. That case is sustained by reference to the doctrine of estoppel, the elements of which are entirely wanting in this case.

The case of *Goodrich v. Milwaukee*, 24 Wis. 422, is also relied on. In that case the street had been paved at the expense of the lot owners and it was held that the city was estopped to regrade without meeting the consequent damages.

Finally, it is insisted that this court has settled the present controversy in *Hart v. Seattle*, 42 Wash. 113, 84 Pac. 640, where it is said:

"It is first contended that it was error to grant any restraining order in the premises. It is said that the city

denies that it is changing the grade, and it is also argued that, inasmuch as the lots are unimproved, the threatened change can result in but slight damage, for which reason the court should not have interfered. With regard to the fact as to the threatened change of grade, we think the court was justified, under the pleadings and affidavits submitted, in reaching the conclusion that such change was threatened by the city's officers. We also think the showing as to resultant damage justified interference by injunction. One of the affidavits placed the damages as high as $5,000, and the attendant facts stated are such as, we think, bring the case within the rule established by this court, that where a proposed change of the grade of a street will seriously damage an abutting owner's property, the change may be enjoined, unless the damage has been ascertained and paid."

Counsel say "plaintiff's (Hart's) property was unimproved." That case holds that unimproved property may be damaged by a change of grade. The question of damages for an initial grade was not involved. In fact, reference to the briefs and record will show that the city had not only established but had physically graded the street in front of the property and was about to make, as was alleged, a most material change. The defense of the city was that the grade was too steep for asphalt pavement and that "it was necessary to take up and relay the pavement in front of lots 13 and 14," being the lots owned by plaintiff.

Our conclusion is that one who buys a city lot abutting a street dedicated but not graded takes it subject to the continuing right of the city to establish an initial street grade which will be conformable to the convenient use of the public; and, if his property be unimproved at the time a physical grade is made, his injury, if any, falls within the operation of the rule *dammum absque injuria*. If, on the other hand, the city has adopted a paper grade, and, pending a physical grade, a lot owner has improved his property with reference to such paper grade, he may recover damages as for a change of grade, his right being referable to the doctrine of estoppel.

It is but fair to say that the novelty of the questions occurring at the trial impelled the trial judge to express a doubt as to the true rule. He accordingly admitted all testimony offered, and overruled motions for a judgment and for a new trial, upon the theory that, if this court held with the city, it could "simply disregard the jury's verdict as to all the lots not improved," whereas, as he said, if he ruled otherwise and this court did not sustain his judgment the case would have to be remanded for another trial.

Remanded, with instructions to enter a judgment consistent with this opinion.

CROW, C. J., GOSE, MORRIS, and PARKER, JJ., concur.