[No. 10968. Department One. August 26, 1913.]

LOUIS RETTIRE *et al.*, *Respondents*, v. THE CITY OF NORTH YAKIMA, *Appellant*.[1]

MUNICIPAL CORPORATIONS—STREETS—GRADE—CHANGE OF GRADE—LIABILITY. The fixing of the grade of a roadway does not control, with any exactness, the grade of the sidewalk, other than that it shall be constructed with reasonable reference to the established grade of the roadway, in order to avoid liability by the city as for a change of grade in subsequently fixing the grade of the sidewalk; and it is not unreasonable to establish the grade of a sidewalk in a residential section ten inches higher than the previously established grade of the roadway, in the absence of any showing of probable injury to abutting property (GOSE and CHADWICK, JJ., dissenting).

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered April 2, 1912, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for an injunction. Reversed.

*Guy O. Shumate*, for appellant.

*R. B. Milroy*, for respondents.

PARKER, J.—This is an appeal from a decree of the superior court for Yakima county, enjoining the city of North Yakima from maintaining a sidewalk in front of the respondents' lots, and requiring the city to remove the sidewalk and filling upon which it rests, so as to restore the grade of the street in front of respondents' lots to the level which the superior court holds to be the grade of the street, including the grade of the sidewalk, previously established by the city; or, in the alternative, that the city commence and prosecute condemnation proceedings and thereby acquire the right, as against respondents, to maintain the sidewalk as at present constructed.

[1]Reported in 134 Pac. 199.

In October, 1903, the city passed an ordinance providing for the improvement, by grading only, of the street upon which respondents' lots abut. The only portion of that ordinance furnishing us any information as to the kind of improvement to be made in pursuance thereof, or as to the grade at which the street was to be improved, reads as follows:

"The said grading to be constructed and completed according to the plans, specification and detail drawings heretofore prepared by the city engineer, and now on file in the office of the city clerk of said city; and shall be graded similar to Fourth street in said city. . . ." Ordinance No. 370.

If any plans, specifications or drawings were ever prepared for this improvement, the city has lost them and was unable to produce them at the trial. However, the city did proceed to grade the street under this ordinance, and charged the expense thereof, by special assessment, against the abutting property, including the lots of respondents. In making the improvement the city did not complete the grade of the street over its entire width, but graded for permanent use only the roadway between the spaces on each side to be thereafter used for sidewalks. To just what extent these spaces were filled or raised above the natural surface of the ground, we are not informed by the record, but it is plain that they were not graded or filled with a view of establishing the grade of the surface of the sidewalks to be thereafter constructed. In view of the fact that we have no plans, specifications or drawings showing the nature and extent of the improvement contemplated by the ordinance, and the fact of the levy of the special assessment by the city to pay the expense of the improvement, we must presume that it was constructed in compliance with the ordinance.

The front of the respondents' lots was in a natural depression, lying slightly below the level of the surrounding land. After the grading of the street, respondents graded their lots, as they claim, with reference to the grade of the street, leaving the front of the lots seven inches below the street, and the

back of the lots sixteen inches higher, so as to be able to ir-
rigate them. They also raised their dwelling house then upon
the lots, but to what level with reference to the grade we are
not informed. This is the substance of all of the facts shown
by the record which we regard as material to the questions
of the establishing of the grade of the street by the city, and
respondents' improvement of their lots with reference thereto,
prior to the spring of 1911, when the city raised the sidewalk
spaces by filling in front of respondents' lots and constructed
a cement sidewalk thereon, the surface of which is ten inches
higher than the center of the street as previously graded and
eighteen inches higher than the front of respondents' lots as
graded by them. We are not informed how high the surface
of the sidewalk is above the roadway at the curb, nor as to
how much crown there is to the surface of the graded roadway.
This is the sidewalk against which the decree of the trial
court is directed.

The principal question for our determination is, Did the
passage of the 1903 ordinance and the improvement of the
street thereunder by the city constitute such an establishing
of the grade of the street over its entire width in front of re-
spondents' lots as to deprive the city of the right to con-
struct this sidewalk with its surface ten inches higher than the
center of the street as graded under that ordinance, without
acquiring the right to so construct the sidewalk, by condem-
nation proceedings, as against respondents? Our decisions
in *Fletcher v. Seattle* 43 Wash. 627, 86 Pac. 1046, 88 Pac.
843, and *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107
Pac. 1061, have settled the law of this state in harmony with
the generally prevailing rule that a municipal corporation is
not liable for mere consequential damages resulting to the
owners of abutting property from the original grading of a
street, and that no constitutional right of such an owner is
invaded thereby. 4 Dillon, Municipal Corporations (5th ed.),
§§ 1676, 1684. On the other hand, our statutes, Rem. &
Bal. Code, § 7815 (P. C. 171 § 125), recognize the right of

the owner of abutting property to damages arising from a change of grade of a street by a municipal corporation, after establishing such grade.

Counsel for both the city and respondents proceed in their argument upon the theory of both these propositions being the law. While counsel for the city makes some contention that the official grade of the street was established by the improvement ordinance of 1903 some seven inches higher than the center of the street as then physically graded, having at the trial sought to so show by introducing in evidence certain data from the office of the city engineer, we are inclined to agree with the trial court that such data was not admissible against the respondents, and that whatever grade was established by that ordinance or as a result thereof is evidenced only by the proof of the physical grade of the roadway made by the city under that ordinance. It is of little consequence here whether we regard the grade as being established by the physical improvement, which, according to the views of this court expressed in *Sargent v. Tacoma,* 10 Wash. 212, 38 Pac. 1048, would be sufficient for that purpose; or whether we regard the grade as being established by the ordinance; since the physical grade made in pursuance of the ordinance is the only evidence of the grade then established. We will, therefore, proceed upon the assumption that the street was graded in compliance with the 1903 ordinance, and that, so far as the portion of the street other than the sidewalk spaces is concerned, the grade was then officially established as evidenced by the physical improvement.

We cannot, however, agree with the contention that the grade of the surface of the sidewalks to be constructed in the future on the then ungraded sidewalk spaces was fixed with any degree of exactness by the 1903 ordinance, or the physical grading of the roadway in pursuance thereof. There was nothing in that ordinance to indicate what the grade of the surface of the future sidewalks should be, except that it may be inferred therefrom that such sidewalks would be built

upon a grade reasonably conforming to the grade of the road-
way then made.   It is common knowledge that sidewalks in
cities are  seldom on an exact level with the roadway portion
of the street, and that sidewalks are almost always higher
than the roadway at the curb.   Nor is there any uniform rule
that requires sidewalks to be constructed on any particular
level with reference to any part of the roadway.   It may be
conceded that the fixing of the grade of the roadway would, in
a measure, control the grade of the future sidewalk, and that
the owners of abutting property would have the right to have
the sidewalk constructed at a reasonable grade with reference
to the previously established grade of the roadway; but we
are of the opinion that the mere fixing of the grade of the
roadway, which was all that was done here, would not control
the future grade of the sidewalk, further than that it should
be constructed with reasonable reference to the previously es-
tablished grade of the roadway.   The only case coming to our
notice which seems to hold that the grade of the roadway con-
trols, with any degree of exactness, the grade of the sidewalk
is that of *Gallaher v. Jefferson,* 125 Iowa 324, 101 N. W.
124; but in that case the grade of the improvement was con-
trolled by a general ordinance of the city providing that "the
grade line of permanent sidewalks shall be the same level as
the established grade in the center of the street."

The question then remains, Was the construction of this
sidewalk with a surface grade ten inches higher than the center
of the street an unreasonable grade in view of the previously
established grade of the roadway?   This, it seems to us, is
of necessity a matter that, in the first instance, must be left
to the discretion of the city authorities, and that a variation
of only ten inches between the grade of the sidewalk and the
grade of the roadway in front of residence property, without
any showing of special circumstances indicating probable in-
jury to abutting property, is not such an unreasonable exer-
cise of discretion on the part of the city authorities as calls
for the intervention of a court of equity.   If this had occurred

in front of business property, where the approach to business houses required a step down of ten inches at the main entrance to such places, it is not impossible the circumstances might be such as to call for the interference of the equity powers of the court in protecting the rights of the property owner; but we have no showing whatever here as to any probable damage resulting to the property of these abutting owners by the construction of the sidewalk in question.

We notice in the findings of the court a statement indicating that, in filling for the construction of this sidewalk, the city cast rock, sand and gravel upon the front of respondents' lot, breaking their fence in so doing. Just to what extent the trial judge was influenced by this fact, we are unable to say, but that he should not have been influenced in his decision by any such fact is rendered plain by the fact that there is not a word of evidence in the statement of facts so showing, and it is certified to us as containing all of the evidence. We, therefore, cannot consider any such fact in arriving at our decision here. There is practically nothing before us except the question of an alleged material change of a previously established grade. We are of the opinion that no such change has been shown by the record brought here, which purports to be the entire record of the cause, as would warrant interference by the courts with the maintenance of this sidewalk by the city.

We are of the opinion that the learned trial court erred in rendering its decree against the city, and that therefore the same must be reversed.

Crow, C. J., and Mount, J., concur.

Gose and Chadwick, JJ. (dissenting)—We think the sidewalk as laid was a substantial and material departure from the established grade of the street, and that the respondents are entitled to relief as prayed for and granted by the trial court. We therefore dissent.