CITY OF MANGUM v. TODD.

No. 3511. Opinion Filed May 12, 1914.

Rehearing Denied June 16, 1914.

(141 Pac. 266.)

1. MUNICIPAL CORPORATIONS—Establishment of Grade—Damages. Under section 722, Comp. Laws 1909 (sections 608, 609, Rev. Laws 1910), as construed in the light of section 24, art. 2, Williams' Ann. Const. Okla., a city of the first class is not liable to the owner of property abutting on a public street, on account of the establishment of a grade in the first instance, for damages purely consequential in their character, when the grade so established and the improvement of the street made thereunder are reasonable and free from negligence.

2.   **SAME—Change of Grade.** Where a city of the first class changes a previously established grade of a street, it is liable for consequential damages to the owner of abutting property, where the lot has been improved with reference to the previously established grade, and the damage has resulted because of the change.

3.   **SAME.** One who buys lots abutting on an unimproved public street in a city of the first class understands and consents in advance, as an element entering into his purchase, that the street will later on have to have its grade determined and established by the municipal authorities; and, although such grade, when so originally established, may result in consequential damages to the owner, they are not recoverable, provided the grade is reasonable and such as might ordinarily have been expected, under the situation presented.

(Syllabus by Brewer, C.)

*Error from District Court, Greer County;*
*G. A. Brown, Judge.*

Action by Jarret Todd against the City of Mangum, a municipal corporation. Judgment for plaintiff, and defendant brings error. Reversed.

*Ledbetter, Stuart & Bell, Percy Powers,* and *A. E. Pearson,* for plaintiff in error.

*T. P. Clay,* for defendant in error.

Opinion by BREWER, C. The controlling and all-important question in this case is: Can the owner of a lot abutting on a public street of a city of the first class recover damages purely consequential in nature, arising because of the establishment of a permanent grade, in the first instance, by the proper municipal authorities, where the establishment of the grade and the resulting improvements have been properly made without negligence?

The First Legislature assembled after statehood passed an act which was approved April 17, 1908 (section 722, Comp. Laws 1909; sections 608, 609, Rev. Laws 1910), the first section of which is as follows:

"The mayor and council of cities of the first class are hereby empowered to establish and change the grade of any streets, avenues, lanes, alleys and other public places in such cities, and to

permanently improve the same by paving, macadamizing, curbing, guttering and draining the same, including the installing of all manholes, catch basins and necessary drainage pipes whenever, in their judgment, the public convenience may require such improvements, subject only to the limitations prescribed in this act; provided, that any change of any grade established by the city shall not be made without making due compensation to the owners of abutting property for any damage thereby caused to the permanent improvements erected thereon, with reference to the previously established grade."

This section, in so far as the proviso is concerned which deals with the change of an established grade, is substantially the same as was the statute (section 443, Wilson's Rev. & Ann. St. 1903) which was in force prior to and at the date of the adoption of the Constitution. This old statute, together with the effect of the proviso referred to, has had the very careful consideration of this court in an exhaustive opinion by Mr. Justice Williams in the case of *Adams v. Oklahoma City,* 20 Okla. 519, 95 Pac. 975, in which case it was held that the city was not liable for consequential damages occasioned by the establishment of a grade in the first instance. In that case Justice Williams goes into the reasons why this should be true, and, among other things, says:

"There is a good reason for the policy that cities should not be liable for damages occasioned in the first establishment of grades. It would discourage public improvements if an entire section of a city were allowed to recover damages from the municipal government for injuries resulting to abutting or adjacent lots on account of grades first established. Cities are built upon tracts of land irrespective of the existing natural conditions; some parts upon elevation, others upon depressions. These must be made to subserve the demands for necessary city improvements. By no other rule or policy could cities reasonably be built with a view to the construction of streets for the necessary travel and the placing of sewerage for the preservation of health, thereby promoting the public comfort and convenience. Elevations must be leveled, and lowlands and depressions raised. Buildings first constructed are erected with an understanding that a change in the physical conditions must take place for the benefit of the entire community. A building is placed upon a hill with a reasonable expectancy that a street is to be cut there, and that

such building will, in all probability, be above the grade when established; and one is put upon a draw or lowland with the reasonable apprehension that a street will be graded and filled, being raised at least to a grade far above its level. These are the inevitable incidents of improvement, development, and progress. Otherwise no cities could reasonably be built. There would be no boulevards, no parks, no broad streets paved and provided with commensurate sidewalks for the convenience of the public, whether pedestrians, equestrians, or by vehiculation, steam, or electricity; for bankruptcy would overtake the city in its first growth. With any other interpretation in this country there could be no material development or improvement in our cities as to streets and thoroughfares; but we would have narrow irregular streets like those of the Spanish-American countries, without any regard to grade or surface. Nor is the right of the individual morally encroached upon by such a policy, though 'private interest must yield to public accommodation.' With the grading of streets, the laying of sewerage and water pipes, the cutting down of hills and filling up of hollows, and the beautifying of cities, there is corresponding increase of value as to space and area. The party having such property, by raising the grade of the lot to that of the street, the value of the same, as a rule, is proportionately increased to amply compensate for all costs in the grading thereof. The values of lots and realty in cities keep corresponding pace with its growth and development, and an outlay for grading of lots to conform to the streets is usually followed by such increment of value as to work no hardship. *Smith v. Corporation of Washington City*, 20 How. 146, 15 L. Ed. 858; *Davis v. County Commissioners*, 153 Mass. 218, 26 N. E. 848, 11 L. R. A. 750; *Alden v. City of Minneapolis*, 24 Minn. 262."

The correctness of the decision in *Adams v. Oklahoma City, supra*, under the law as it then stood, does not seem to be questioned, but it is seriously contended that the rule there announced would not apply to cases arising under the Constitution; in other words, that, while the construction of the statute in that case is undoubtedly correct, yet that the proviso to the statute considered in that case, and also in the statute cited, *supra,* enacted since statehood, limits and curtails the effect of section 24, art. 2, of the Constitution, which says:

"Private property shall not be taken or damaged for public use without just compensation."

This raises a very interesting question; a question that pre-sents difficulties, and in the decision of which neither courts nor text-writers seem to agree. The difficulty all comes about from the insertion of the words "or damaged" in the provision of the Constitution quoted. All of the earlier state Constitutions pro-vided against "taking" of private property, etc., and it was not until the adoption of the Constitution of Illinois in 1870 that this general provision was enlarged as in our own Constitution. This question has not had the consideration of this court. It arose squarely in the case of *City of McAlester v. McMurray*, 26 Okla. 519, 109 Pac. 838, where the question is stated by Jus-tice Williams, but left unanswered because of other controlling points in the case. We have examined many of the conflicting views of the courts, and are impressed with the discussion of this identical question by Judge Dillon in his work on Municipal Corporations (5th Ed.) vol. 4, secs. 1684, 1685, and we feel that, as the question is new here, we are justified in quoting from this very learned author somewhat *in extenso* as follows:

"Several of the more recent state Constitutions have, as we have seen, ordained that 'private property shall not be taken or damaged for public use without compensation.' This extension of the usual constitutional provision by the introduction of the word 'damaged' was first adopted in 1870 in the Constitution of that year of the state of Illinois. Undoubtedly this word effects a very important change in the law, the exact scope of which remains yet to be definitely ascertained and limited by the courts. After much uncertainty and oscillation in the state of Illinois, it has at length been deliberately determined that this constitu-tional provision requires compensation to be made not only where property is actually invaded, but also where it appears that there has been a physical disturbance of a right, either public or pri-vate, which the property owner enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained damage with re-spect to his property in excess of that sustained by the public generally. The interpretation was sustained as not in conflict with the federal Constitution by the Supreme Court of the United States, in a case that came from that state.

"What effect has the introduction of the word 'damaged' into the organic law on the liability of a municipal corporation

for consequential damages caused by bringing a street to an established grade line, or by changing the established grade of a street? In answering this question, it must be borne in mind that streets are essentially public in their nature, and, as such, are under the paramount control of the Legislature, which, subject to the property rights of the abutting owners, has, except as specially limited by the Constitution, plenary power over them and their uses for all legitimate street purposes. Power to graduate and improve streets so as to make them safe and convenient for public use unquestionably exists in the Legislature, and is almost universally conferred by it upon the municipal or local authorities, to be used according to their judgment. This is a continuing power, not exhausted by its first exercise. When, under such legislation, an owner dedicates without restriction land for a public street, he must be taken to consent, for the reasons stated in a previous section, that the public authorities may determine grades, and possibly what future changes in grades may be necessary or desirable for the public convenience. He must contemplate that hills within the limits of the street will be reduced from the natural surface, making a cut; that ravines and low places therein will be filled up to the ordained grade or level, leaving an embankment in front of the abutting property. The right to make such improvement of the street for legitimate street purposes would seem to be embraced in his grant or dedication to the public. If lands for a street are unconditionally acquired by eminent domain, the right thus to graduate and improve the street for street uses proper is included in the compensation awarded. In view of these considerations, it seems to us clear that for the original establishment of a grade line and the reduction of the natural surface of the street for street purposes to such line, there is no legal right or even natural equity in the dedicator or his assignee to compensation. That there is no implied or common-law liability on the part of a municipality to make compensation in such cases is everywhere admitted and adjudged; and in our examinations we have found no remedial statute expressly limited to city streets creating a liability in favor of the abutting owner for damages caused by bringing the street down to a grade line for the first time established.

"But where a grade has been officially established, and where improvements have been thereafter made according to such established grade, and it is afterwards changed to the injury of the abutting owners, there is a strong natural equity in their favor for compensation. This is manifested by the frequency of statutes creating liability for damages caused to property, and

especially to improved property, by a change of an established grade. For the reasons above suggested, it seems to us that, on principle, the mere provision of the Constitution imposing a liability for property damaged for public use does not create a liability on the part of the municipality for reducing the natural surface of the street, in the course of its normal and ordinary improvement for street purposes proper, to a grade line for the first time established. If there are cases to the contrary, we doubt whether they were well considered, and think that they are not well decided. Admitting that, under the amended constitutional provision under consideration, a municipality may be required to make compensation, not only in cases where there is an actual physical invasion of the adjoining property, but also a physical disturbance of a right or easement connected therewith, such as the easement of access, or of light and air, which causes a special damage over and above special benefits and over and above the damage which is sustained by the public generally, still such rights and easements of the abutting owner or the right to the support of his soil is, in the case under consideration, subject, by the very terms and condition of the dedication or acquisition of the street, to the right of the public to bring it down for street purposes proper to such grade line as the public authorities shall first adopt."

Colorado, where the Constitution (section 15, art. 2) provides, "Private property shall not be taken or damaged, for public or private use, without just compensation," has had occasion, through its Supreme Court, to consider this point a number of times, and the law seems to have become finally settled that "a municipality is not liable to the owner of a lot abutting on a street for the raising or lowering of the grade from the natural surface to the grade established in the first instance, unless the change of grade is unreasonably or negligently made," as was said in the case of *Leiper v. The City of Denver,* 36 Colo. 110, 85 Pac. 849, 7 L. R. A. (N. S.) 108, 118 Am. St. Rep. 101, 10 Ann. Cas. 847.

The Supreme Court of the state of Washington, with a very similar Constitution and with a statute substantially the same as our own, relative to the establishment of a street grade in the first instance, held, in the case of *Ettor et ux. v. City of Tacoma,* 57 Wash. 50, 106 Pac. 478, as follows, in the syllabus:

"In the absence of statute, a municipal corporation is not liable for damages resulting from the original grading of a street, either within the original corporate limits, or in any addition thereto; the original grading of a street not being a taking or damaging within Const. art. 1, sec. 16, prohibiting the taking or damaging of property for a public use without compensation."

And later on the same court in the case of *Rettire et ux. v. City of North Yakima,* 75 Wash. 143, 134 Pac. 699, has said in the syllabus:

"Under Rem. & Bal. Code, sec. 7815, providing that, if any street, etc, or the right to use and control it for purposes of public travel, shall belong to any city, and such city shall establish a grade therefor requiring any cut or fill, damaging abutting property, the damages arising from the making of the grade may be ascertained as provided in the statute, but that this section shall not apply to the original grading of any street, etc., a municipal corporation is not liable for mere consequential damages resulting to the owners of abutting property from the original grading of a street, but is liable for damages arising from a change of grade, after a grade has once been established."

And in the body of the opinion the court considers and refers to some of its former opinions and the changes in the statute law, and declares:

"Our decisions in *Fletcher v. Seattle,* 43 Wash. 627 [86 Pac. 1046, 88 Pac. 843], and *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, have settled the law of this state in harmony with the generally prevailing rule that a municipal corporation is not liable for mere consequential damages resulting to the owners of abutting property from the original grading of a street, and that no constitutional right of such an owner is invaded thereby."

It is frankly conceded that a number of the states with similar constitutional provisions have held that purely consequential damages are recoverable. Some of the constitutional provisions are broader than ours, and are so formed as to make this conclusion necessary. In other instances statutory provisions have effected a like result. In our case, if we follow the reasoning of Judge Dillon, and such courts as those of Colorado and Washington and others, both our constitutional provisions and our statutory enactments are made to stand in harmony. We are in-

clined to take this view of the matter, and it is strengthened by the fact that the present statute, which limits the right to have consequential damages in such cases as this to cases wherein the established grade has been changed, and property which has been placed there with reference to the previous established grade has been damaged because of the change, was a legislative construction of the constitutional provision practically contemporaneous with its adoption. This legislative construction may be considered, and perhaps is entitled to more weight than usual, because a number of the legislators participated in the forming of the Constitution.

Courts are, and of right should be, reluctant in striking down legislation, as conflicting with the Constitution, unless the conflict appears with clearness. The Legislature, one of the co-ordinate branches of government, usually contains good lawyers, who either draft or advise regarding the legislative matters, and the members of that body, with the recently adopted constitutional provision before them, may have well thought, with Judge Dillon, that the owner of abutting lots understood, and may fairly be said to have assented to, the proposition, when the streets were dedicated to public use, that in the evolution of a city a time would come when streets would of necessity have to be brought to a grade. This would also be true of a purchaser of lots after the dedication. Bringing streets to an original grade is necessarily, and, we may say, universally, an incident in the building of a city. One cannot be built and made sanitary and comfortable for the people without some uniformity in the matter. So we think the dedicator, and those who purchase lots in a city on an undeveloped street, where no grade has been established, may be fairly said to have consented in advance, as an element of his purchase, that sooner or later an original grade would be established, with reasonable care and consideration for the rights of all, and that the consequential damages which may flow from a reasonable and careful establishment of the grade and improvements of the street have been waived or surrendered for the common good.

This power in the municipality must necessarily be limited

to a reasonable and intelligent exercise thereof; where it is ex-- ercised beyond this, say, in an unusual and utterly unnecessary manner, in a way that reasonable men could not have thought, at the time of purchase, would ever be pursued, it might be that consequential damages would be allowed, on the theory that the conduct of the municipality amounted to such disregard of duty as to amount to negligence, and because it could not be said that such an exercise of. the power could have been contemplated or reasonably expected, and therefore assented to by the owner at the time of purchase.

So it might be that the municipality would permit streets to be used or obstructed in such an unusual manner, as affecting the lot owner's property, such as his right of ingress and egress, as to allow the recovery of consequential damages, as was held in the Colorado case of *Leiper v. City of Denver,* 36 Colo. 110, 85 Pac. 849, 7 L. R. A. (N. S.) 108, 118 Am. St. Rep. 101, 10 Ann. Cas. 847.

Of course, under the very terms of the statute, the city would be liable for such damages, if occasioned by the change of an. established grade, where the lots have been improved with reference to such former grade.

In this case there is no contention that the grade was unusual or unnecessary under the situation presented, or that there was negligence involved in the matter.

The judgment should be reversed, and proceedings had in accordance with the views of the law herein expressed.

By the Court: It is so ordered.