[No. 7114.    Decided October 15, 1908.]

H. M. LUND *et al.*, *Respondents*, v. IDAHO & WASHINGTON
NORTHERN RAILROAD, *Appellant*.[1]

EMINENT DOMAIN—DAMAGE TO ABUTTING PROPERTY.  The right of
ingress or egress as to lots abutting on a street is property, and in-
terference therewith by building a railroad in the street is damage,
within the meaning of the constitution requiring that compensation
be first made before taking or damaging property.

SAME—REMEDY OF OWNER—INJUNCTION—CONDITIONS ON GRANTING.
Upon granting an injunction to restrain the operation of a railroad
until damages to abutting property be first paid, the injunction
should be held in abeyance for thirty days to allow condemnation
proceedings to be commenced.

Appeal from a judgment of the superior court for Stevens
county, Chapman, J., entered November 30, 1907, upon find-
ings in favor of the plaintiffs, after a trial before the court
without a jury, in an action to enjoin the operation of a
railroad.    Affirmed.

*Belden & Losey* and *Post, Avery & Higgins*, for appellant.
*Cannon & Lee*, for respondents.

DUNBAR, J.—Among the material allegations of the com-
plaint in this case, it is alleged that, on the 24th day of
October, 1907, before daylight of said day, without the con-
sent of plaintiffs or authority of them and against their wishes,
the defendant entered upon Fourth street, in the city of New-
port, directly in front of the premises owned by plaintiffs,
and whereon they were then and for some years prior thereto
had been conducting a retail hardware store; and that the
defendant then built upon said street, and diagonally across
the same, in front of plaintiffs' property, its main line of
railroad; that no compensation had been paid to plaintiffs
for damages sustained by reason of such building, and for

[1]Reported in 97 Pac. 665.

future operation of the railroad; alleges special damages by reason of the obstruction of the street and the prevention of travel thereon, and by reason of damage to plaintiffs' premises by smoke, steam, grease, cinders, noise, etc.

Defendant admitted the building of the railroad and its intention to operate the same as a steam railroad, but denied that plaintiffs would suffer any other damage than such as would be suffered by the public in general by the use of the street. Upon these issues, the cause went to trial, and the evidence showed that the market value of plaintiffs' premises was reduced to a material extent by reason of the construction and operation of this road; that the rental value was greatly reduced; and that the plaintiffs' business was damaged and practically made unprofitable by reason of the fact that the building of the road prevented safe ingress and egress to and from their place of business. The court, among others, made the following findings of fact: That plaintiff's premises, prior to the construction of defendant's road, was valuable as a retail business property, and was a desirable retail business location; that his hardware business was, and for many years had been, a profitable and lucrative business; that the defendant in the nighttime, without the consent and against the protest of the plaintiffs, entered upon the premises substantially as alleged in the complaint; that the said Fourth street had a width of seventy feet; that the said railroad, as so constructed, and the operation thereof in the usual manner of operating engines and cars over and upon the same, will materially interfere with the ingress to and egress from plaintiffs' said premises, and will cause smoke, cinders, and steam to fall upon plaintiffs' premises, and will otherwise cause injury and damage to plaintiffs' said business; that all said injuries so caused constitute special damages to plaintiffs' said property and plaintiffs' said business; and that the construction of the said railroad was with the permission of the city of Newport and authority theretofore granted by ordinance. As conclusions of law, the court found that the plain-

tiffs were entitled to an ijnunction restraining and enjoining the defendant from in any manner operating or running its engines, cars, trains, or other railroad equipment over and upon its said track in front of plaintiffs' said premises, or in any manner using said railroad at said point, until it shall first have paid to plaintiffs the amount of damage caused to plaintiffs' said property by reason of such construction and operation of the road.

Appellant excepted to the material findings of fact in relation to the respondents' damages, and insists that said findings are error. An examination of the record, however, convinces us that the findings are abundantly sustained by the testimony, and we shall therefore discuss the case from the standpoint made by these findings. Section 16, art. 1, of the state constitution, is as follows:

"No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner."

This language is so plain and unequivocal that to undertake to construe it would be like undertaking to demonstrate a self-evident proposition in geometry. It is terse, vigorous, plain, compact, and certain as to its meaning, and the only thing which will bear discussion in connection with it is, what is private property, what is a taking, and what is a damaging of private property. It has been the uniform holding of this court since the decision in the case of *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, that the right of ingress and egress, which the owner of lots abutting on a street had, was property, and that the interference with such right was a damage within the meaning of the constitutional provision. In commenting on *Moore v. Atlanta*, 70 Ga. 611, where the constitutional provision under consideration was similar to ours and where the injunction was denied, we said:

"A case has been brought to our notice which is exactly in point in its ruling, viz: *Moore v. City of Atlanta*, 70 Ga.

611. The constitution of Georgia provides that private property shall not be taken or damaged without just and equitable compensation being first paid. The city of Atlanta was proceeding to grade a street in front of Moore's property, and he applied for an injunction to restrain the prosecution of the work until his damages should be assessed and paid. The writ was refused, and on appeal the supreme court affirmed the judgment. The decision of this case, as the reading of the opinion shows, was based on the argument that it was better that one man should be left to recover his damage by ordinary suit at law than the city authorities be hindered in grading the street; or, in other words, the damage to one man was balanced against the possible inconvenience of many, which is not a recognized basis of legal decision. The embarrassments of the constitutional provisions were pointed out, but it seems to us the plain letter of that instrument was diregarded. Justification for the decision was sought in the case of *Stetson v. Chicago etc. R. Co.*, 75 Ill. 74, but the fact seems to have been entirely overlooked that the constitution of Illinois does not require that compensation be first made in any such case. We can foresee many difficulties, and perhaps much litigation, likely to ensue from the faithful enforcement of our constitutional requirement that damages be first paid; but we have no choice in the matter, and these difficulties, as well as many others, must be met and dealt with as they arise."

This case was followed by *Hatch v. Tacoma, Oly. & G. H. R. Co.*, 6 Wash. 1, 32 Pac. 1063, where it was decided that the owner of property abutting on a street had the right to restrain the operation of a railroad in the street until damages were paid, on the theory that his right to the use of the street in front of his premises was a right distinguished from that of the general public and was properly subject to damages. We said in discussing that case:

"In any event, if the appellants' property has been damaged in a manner different from that of the public generally by the appropriation of the street for railroad purposes, they are entitled to compensation; and damages, to be recoverable, are not confined to the land itself, but may only [also] affect

that which is incident thereto, and necessary to the use thereof. The owner of a lot on a street in a city has a right to the use of the adjoining street which is distinct from that of the public, and such right is as much property as the lot itself, and cannot be taken away or injuriously affected, without compensation."

This court has never wavered in its adherence to the general principles announced in these two cases, but has substantially reaffirmed the doctrines therein announced in *Patton v. Olympia Door & Lumber Co.*, 15 Wash. 210, 46 Pac. 237; *Seattle Transfer Co. v. Seattle*, 27 Wash. 520, 68 Pac. 90; *State ex rel. Smith v. Superior Court King County*, 26 Wash. 278, 66 Pac. 385; *Schwede v. Hemrich Bros. Brewing Co.*, 29 Wash. 21, 69 Pac. 362; *Olson v. Seattle*, 30 Wash. 687, 71 Pac. 201; *Stone v. Seattle*, 30 Wash. 65, 70 Pac. 249, 67 L. R. A. 253.

The learned counsel for appellant attempts, but we think unsuccessfully, to distinguish these cases. While, of course, the situation in each case was somewhat different from the others, in all of them the court adhered to the main principle that the abutting property owner had an interest in the street in addition to the general interest of the public, and that these interests or easements constituted private property which could not be damaged without compensation first having been made. The right to an injunction was also determined in many of the cases cited. Applying the rule of the cases cited to the facts in this case, where it appears that the operation of the road will materially interfere with ingress and egress to and from respondents' premises, and that by reason of damage done to the respondents' property the market and retail value of the premises is materially diminished and respondents' business rendered less profitable, the respondents are entitled to the relief granted by the trial court.

The appellant seems to rely largely on the case of *Smith v. St. Paul, Minn. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, and quotes extensively from the opinion in that case. That case in no particular overrules the principle

announced in *Brown v. Seattle*, or *Hatch v. Tacoma, Oly. & G. H. R. Co.*, but on the contrary approves both cases. In the judgment of the writer of this opinion, the word "physical" was given undue prominence in the opinion of that case, and has led to some confusion, for it is a little difficult to understand how the act of ejecting smoke, gases, fumes, and odors into the dwelling house of another can consistently escape the imputation of a physical invasion. But, as showing that the case is in no wise controlling here, we quote from the opinion at some length:

"The jarring of the earth of respondents' lots and the casting of soot and cinders thereupon, and the emission of smoke physically injuring property are injurious physical effects to the *corpus* of respondents' property, which, we think, come within the scope of the term 'damaged,' as used in the constitutional provision. If a railroad company cannot carry on its business upon its own property without necessarily disturbing the physical conditions of other property, it is evident that such company has not acquired sufficient property for the conduct of its business, and it should be required to pay such damages as the actual physical disturbance of the neighboring property entails thereupon."

Thus it will be seen that the questions involved in this case were not considered in that case, and that there was no attempt to overrule or modify the doctrines of *Brown v. Seattle* or *Hatch v. Tacoma, Oly. & G. H. R. Co.* In view of the many and uniform decisions of this court on the determinative questions involved, we do not feel called upon to enter again into a review of the cases decided in other jurisdictions.

The judgment will be affirmed, but the injunction will be held in abeyance for the period of thirty days from the date this opinion is filed to allow appellant to commence condemnation proceedings. If such proceedings are not commenced within that time, the injunction will be enforced.

HADLEY, C. J., CROW, MOUNT, and ROOT, JJ., concur.

FULLERTON and RUDKIN, JJ., took no part.