[No. 10987.   Department One.   April 18, 1913.]

SAMUEL R. STERN *et al., Appellants,* v. THE CITY OF SPOKANE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—USE OF STREETS—CON-STRUCTION OF BRIDGES—DAMAGE TO ABUTTERS. A city, being bound to maintain and keep its streets and bridges in repair, is not liable to an owner of an abutting lot who sustained loss and damages by reason of the fact that the city occupied the street in front of his lot for a temporary tower and power house, used in constructing the concrete arch for a bridge, where there was no unreasonable delay or negligence on the part of the city in the construction of the bridge.

APPEAL—REVIEW—AFFIDAVITS. Affidavits used on motion for a new trial must be brought up by bill of exceptions or statement of facts.

Appeal from a judgment of the superior court for Spokane county, Pendergast, J., entered October 17, 1912, upon the verdict of a jury rendered in favor of the defendant, in an action for damages to property by reason of obstructions in a street. Affirmed.

*Robertson & Miller* and *J. W. Hancox,* for appellants.

*H. M. Stephens* and *Wm. E. Richardson,* for respondent.

CHADWICK, J.—Plaintiffs are the owners of a three-story brick building and an adjoining frame structure, in the city of Spokane. The lower floor of these buildings is devoted to business uses, and the upper floors are used as a hotel and lodging house. The city of Spokane is built on either side of the Spokane river, and the city has for a long time maintained a steel bridge on Monroe street, it being the prin-

[1]Reported in 131 Pac. 476.

cipal connecting street between the north and south sides. The old bridge being adjudged to be insecure, the city closed it for traffic on January 1st, 1909, and immediately began the work of constructing a new concrete bridge, the main span of the new structure being, as we are informed, the longest arch of like construction in the world. In order to facilitate the work of dismantling the old and erecting the new bridge, the city erected two high towers in the street in front of plaintiff's property. Over these towers, cables were run to and over like towers to the opposite side of the river. These cables were used as an aerial tramway, over which the old material was removed and the falsework and new material were carried. The city also erected a house in the street and installed an engine. This engine furnished power to run the tramway. The free use of plaintiff's property was interrupted, and this action was brought to recover damages alleged to have been suffered in the way of lost rents, etc.

Without indulging in unnecessary detail, it may be said that the plaintiffs base their right of recovery upon the allegations, that the act of the city is a damaging, within the meaning of art. 1, § 16, of the constitution, and that they are entitled to have their damages assessed in money; that, if the right of the city be sustained, the work was negligently and carelessly done; that the plans were defective; and finally, if it be held to be otherwise, an unreasonable time was consumed in finishing the work. The case was tried to a jury, and a general verdict was returned in favor of the city. The following interrogatories were submitted to and answered by the jury:

"No. 1. Was there unreasonable delay in the construction of the bridge, and if so what was the excess of time over and above a reasonable time? A. No.

"No. 2. Did the plaintiffs suffer any loss of rentals by reason of the wrongful construction or placing of any of the structures, machinery or appliances used in building the bridge, and if so what was the amount of such loss? A. No.

"No. 3. Did the plaintiffs suffer any loss of rental on ac-

count of any negligence in the use or operation of any of the machinery or appliances used in building the bridge, and if so how much? A. No."

The trial was a long one, and the testimony took a wide range. It was conflicting upon all the material issues; and in consequence we feel bound by the verdicts, general and special, and hold, without further discussion, that the work was not negligently done, and that the city did the work within a reasonable time. It follows then, that there can be no damage unless it be under the Bill of Rights. Appellants state their position in broad terms. It is that an owner of land abutting a street is given a cause of action for any invasion of his property or right of occupation, or for any act that may injure the rental value of his property, and if the occupation of a street interferes with the owner's use and enjoyment of property in greater degree than is suffered by the public generally, that he is entitled to compensation for such use or taking irrespective of any negligence or omission arising in or growing out of the prosecution of the work. Appellants rely on the following cases: *Smith v. St. Paul, Minn. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70 L. R. A. 1018; *Lund v. Idaho & Washington N. R.*, 50 Wash. 574, 97 Pac. 665, 126 Am. St. 916; *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161; *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086; *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385; *Rigney v. Chicago*, 102 Ill. 64; *Chicago v. Taylor*, 125 U. S. 161.

This court has held, in common with the majority of the courts in this country, that the individual is bound by the intent and purpose of the original dedicator, and that an abutting owner cannot claim damages resulting from an original grade. *Fletcher v. Seattle*, 43 Wash. 627, 86 Pac. 1046, 88 Pac. 843; *Ettor v. Tacoma*, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061. And that "the dedication of streets and

alleys to the public use implies an agreement of the dedicator and his successors in interest that the city may establish grades and improve streets thereto in aid of such use." *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859.

The power to establish grades and improve streets imposes a duty on the administrative officers of a city to keep them in proper repair, to pave and repave, to take out worn material and to replace it with new, to build and repair bridges, to remove them and to build others in their place. It is a duty imposed by statute, and if omitted, subjects the city to resultant damages. It has never been held that a municipality was liable for damages consequent upon a performance of a duty. The intent of the dedicator to submit his property to the city for the establishment of grades and the building of streets and bridges being established, it follows by the same intent that the city may, as occasion requires, occupy the streets for the purpose of making or maintaining an open and passable highway in front of the abutting property. The cases cited by appellants are not in point. In all of them the act complained of was such that it permanently changed a physical condition—either destroyed the use of the street or added an additional servitude; as, for instance, in the case of *Sweeney v. Seattle,* 57 Wash. 678, 107 Pac. 843, which is relied on by appellants. Although not indicated in the opinion, the damage there sought to be recovered arose out of a regrade of Pine street, in the city of Seattle. In such cases, damages are recoverable. In doing its work, the city left a permanent obstruction at the end of an alley which was essential to the use of the plaintiffs' property. If the testimony had shown a temporary obstruction incident to the repair of the street, no recovery would have been allowed. The logic of that case is that all property suffering a direct damage on account of a regrade is entitled to compensation.

Appellants charge counsel with misconduct, and a juror with interest. The motion for a new trial was filed May 18,

and a supporting affidavit was filed May 31. The affidavit is not made a part of the statement of facts. Although not properly before us (*Spoar v. Spokane Turn-Verein*, 64 Wash. 208, 116 Pac. 627; *Sakai v. Keeley*, 66 Wash. 172, 119 Pac. 190), we have examined the affidavit and find that it does not warrant a new trial.

Counsel asks why verdicts in personal injury cases growing out of the work complained of have been returned and sustained upon the theory that the city negligently constructed an arch which fell causing an unforeseen and unexpected delay. We cannot answer. The fact that one jury will decide a question of fact one way, and another will decide it in a contrary way, does not raise a question of law, nor is the verdict in one case reviewable or to be considered as evidence in another.

Affirmed.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.