[No. 10717. Department One. April 18, 1913.]

JOHN G. F. HIEBER, *Respondent*, v. THE CITY OF SPOKANE, *Appellant*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—USE OF STREETS—CONSTRUCTION OF BRIDGE—DAMAGE TO ABUTTERS. In occupying a street for necessary cables, tramways, false work and engines used in the construction of a bridge, the city is not liable to the owner of an abutting lot for damages by reason of vibration, cinders, soot, and steam which were necessarily incident to the work, where there was no negligence on the part of the city and no physical invasion of the property beyond the street line or a physical projection of the instrumentalities over the adjoining property.

SAME—DAMAGES TO ABUTTERS—OFFSET OF BENEFITS. Any taking or damaging of abutting property by a physical invasion beyond the street line, or a physical projection of instrumentalities over the property, in the work of constructing a bridge, is subject to an offset for benefits under Const., art. 1, § 16.

[1]Reported in 131 Pac. 478.

MUNICIPAL CORPORATIONS—CLAIMS—CONTINUING INJURIES TO PROP-
ERTY—ANTICIPATION OF DAMAGES. A claim against a city for contin-
uing damages to abutting property by reason of the city's occupa-
tion of a street during the construction of a bridge may anticipate
the damages to occur in the future, where the trespass was certain
to continue.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered April 15, 1912, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for damages to property by reason of obstructions in
a street. Reversed.

*H. M. Stephens, Wm. E. Richardson,* and *Bruce Blake,* for
appellant.

*E. O. Connor,* for respondent.

CHADWICK, J.—This case grows out of the same state of
facts as the case of *Stern v. Spokane, ante* p. 118, 131 Pac.
476. In this case, however, damages are not claimed because of
the occupation of the street, but "only for physical injuries
to the building, the reasonable cost of repairing the same,
and loss of rental value, only in the decrease in the fair rental
values caused by the casting of smoke, cinders or grease or
other substances on plaintiff's property." Appellant fur-
ther says:

"This is a case for damages to the respondent's building
caused by the appellant in carrying on the work of construct-
ing the bridge so negligently, carelessly and recklessly, and
without due care operating the engine, machinery, cables,
buckets, etc., whereby soot, smoke, grease, cinders and other
substances were thrown in and upon the building. The paint,
paper, plastering, etc., of the building were destroyed and
tenants driven from the building. It was an invasion of
property rights for which the city must respond in actual
damages."

It is the contention of the city, as it was in the *Stern* case,
that it is not liable for such damages as are necessarily inci-
dent to the work, and can only be held to answer for such

damages as may result from its negligence, and that the
case was not submitted to the jury upon this theory of the
law. The city undertook, by an appropriate motion, to have
the issue defined more clearly. Its motion was overruled, and
while the ruling was probably technically correct, it might
well have been allowed in the interest of clarity. The court
in its instructions properly excluded damages for occupying
the street, but evidently proceeded upon the theory that the
city was liable in any event for any physical injury to the
abutting property. The jury were told:

"(4) This right in the city to occupy Monroe street to
place machinery and to do work upon is limited to the street
and does not extend to adjacent private property, so that if
in the progress of the work, the city caused any substance
to be thrown or cast upon the property of plaintiff, injuring
it, the city would be liable to the plaintiff for any damage
done thereby. Hence if you find by the preponderance of the
evidence that in the progress of the work the city caused
smoke or cinders or grease, or water, or other substances to
be thrown or cast upon plaintiff's property and you further
find that plaintiff's property was thereby damaged, then the
city would be liable for the damage so done.

"(5) Plaintiff also claims damage by reason of alleged
vibration of his building causing damage and lessening its
rental value. Before the plaintiff will be entitled to compen-
sation on this account, he must show by the preponderance
of the evidence that the work done by the city in the con-
struction of the bridge caused plaintiff's building to vibrate,
and injured it physically, or decreased its rental value, and if
you find, then the defendant would be liable for such dam-
age so done, as shown by the preponderance of the evidence."

The court refused to give all instructions predicated upon
the theory of negligence, and as will be seen, directed the
minds of the jury away from it with great care. The effect
of the instructions was that, although the city might occupy
the street, it could not use it or the appliances necessary to
carry on its work without being liable in any event. The
court held the city to such damages as might be incident to a

lawful performance of duty, whereas the law is that it is liable only for its negligence. We may assume that the erection of a structure of the magnitude of the Monroe street bridge would call for cables, tramways, falsework and engines (they are all referred to in the testimony). While such work is in progress, there is a certain annoyance and deprivation of property right. But if the work is done with due care, there can be no recovery, for cables and trams cannot be operated without vibration, and engines cannot be operated without throwing cinders, soot and steam. Whether these things could have been avoided by the exercise of due care depends upon the facts and circumstances of the particular case. It is the duty of a city to maintain streets and bridges, and such inconveniences as necessarily follow the performance of that duty are a burden the property owner must bear. As in the *Stern* case, respondents rely upon *Smith v. St. Paul, Minn. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70 L. R. A. 1018, and kindred cases. Those cases, as explained in *Clute v. North Yakima & Val. R. Co.*, 62 Wash. 531, 114 Pac. 513, and *DeKay v. North Yakima & Valley R. Co.*, 71 Wash. 648, 129 Pac. 574, do not deny, but rather affirm, the right of the city. It is only when there has been an actual taking or a damaging that is not consequent upon the exercise of reasonable care in the performance of the work, that the city will be held liable. Of course, the city would be liable for any damage resulting from a physical invasion of the property beyond the street line, or a physical projection of the instrumentalities used to carry on the work over the adjoining property. If it should appear that an owner will suffer such damages, he may restrain the prosecution of the work, or he may permit it to go on, claiming his damages in an action at law. *Lund v. Idaho & Washington N. R.*, 50 Wash. 574, 97 Pac. 665, 126 Am. St. 916; *Keil v. Grays Harbor & Puget Sound R. Co.*, 71 Wash. 163, 127 Pac. 1113. The rule of damages in either event is the

same, and a taking or damaging by a municipality is subject to an offset for benefits, under § 16, art. 1, of the constitution. *Lincoln County v. Brock*, 37 Wash. 14, 79 Pac. 477.

Plaintiff filed a claim for damages on June 17, 1911. The bridge was not finished and the work progressed for some months thereafter. The city contends that no claim was filed for the damages, if any, which must have accrued after June 17. The claim, although introduced and marked as an exhibit, is not to be found in the record. Assuming that it recites a claim for continuing damages, as asserted in respondent's brief, we think it sufficiently complies with the requirements of the ordinance. It is probably true that respondent could not have maintained a suit for more than the amount stated in the claim. *Dunkin v. Hoquiam*, 56 Wash. 47, 105 Pac. 149. But this rule should not preclude him from anticipating his damages, where the trespass was certain to continue until the work was completed. The notice must have met the requirement of the statute. Rem. & Bal. Code, § 7995; Spokane Charter, art. 12, § 115.

"This court, in common with all other courts, has uniformly held that the object of these ordinances, and the theory upon which they were sustained, was notice so that the city might be able to prepare for the trial of the cause if it was deemed expedient not to settle the claim." *Hase v. Seattle*, 51 Wash. 174, 98 Pac. 370, 20 L. R. A. (N. S.) 938.

While not within the facts, this case falls within the logic of *Falldin v. Seattle*, 57 Wash. 307, 106 Pac. 914.

Reversed and remanded for a new trial.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.