[No. 11742.   Department Two.   May 18, 1914.]

SCHADE BREWING COMPANY, *Respondent*, v. CHICAGO, MILWAUKEE & PUGET SOUND RAILWAY COMPANY, *Appellant*.[1]

COMPROMISE AND SETTLEMENT—CONTRACT — CONSTRUCTION — DAMAGES INCLUDED—SPECULATIVE DAMAGES.   A settlement agreement, whereby the owner of a building upon property abutting on a street gave to a railroad company the same right to excavate and construct its subway in the street as if the company had obtained a decree of appropriation and an award assessing the damages or compensation, does not cover damages which might occur to the buildings in the course of the construction for any cause, even if the agreement had not expressly provided that it was not the purpose of the parties that the compensation paid should be deemed as compensation for any damages which may be caused to the buildings; since such damages would be too speculative to have been contemplated in the settlement.

ELECTION OF REMEDIES—INCONSISTENCY—INJURIES FROM BLASTING. In an action for damages to buildings by reason of blasting in the street, the plaintiff cannot be required to elect between damages through the inherent dangers of the operation, regardless of defendant's negligence, and damages caused by such negligence; as they are not inconsistent.

APPEAL—REVIEW—HARMLESS ERROR.   Error in failing to require an election between two claims of negligence is harmless where one of the claims had no bearing on the case.

[1]Reported in 140 Pac. 897.

EXPLOSIVES—BLASTING IN CITY STREET—LIABILITY—NEGLIGENCE. A railroad company engaged in heavy blasting, in excavating solid rock in a street, is liable for damages thereby caused to buildings on abutting property within a few hundred feet of the blasts, regardless of the question of its negligence in carrying on the work.

TRIAL—SPECIAL VERDICT—VALIDITY. A special finding that work of very heavy blasting with dynamite in solid rock in a street, and within a few hundred feet of buildings on abutting property, is not inherently dangerous, is contrary to law.

TRIAL—SPECIAL VERDICT—CONSTRUCTION. A special finding that blasting in a street was not inherently dangerous, and another that the blasting could have been done without damages to plaintiff's buildings if proper precautions had been taken, are equivalent to a finding that defendant was negligent.

MASTER AND SERVANT—INJURY TO THIRD PERSONS—RELATION—INDEPENDENT CONTRACTOR. A railroad contractor engaged in blasting was not an independent contractor, where he was to receive compensation for the work by "force account" or a percentage upon the cost, and the contract provided that the railroad company should oversee and superintend the work and required everything to be done subject to the control of the chief engineer of the railroad company.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered July 11, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*F. M. Dudley,* and *Cullen, Lee & Matthews,* for appellant.

*Graves, Kizer & Graves* and *Turner & Geraghty,* for respondent.

PARKER, J.—This is an action to recover damages which the plaintiff claims resulted to its brewery building from blasting, done by the defendant in the construction of a subway in the adjoining avenue. A trial resulted in verdict and judgment in favor of the plaintiff, from which the defendant has appealed.

Respondent owns and operates a brewery plant, situated in the city of Spokane, occupying a block bounded on the west by Sheridan street and on the south by Front avenue.

On the southwest corner of the block, is situated respondent's main building, fronting westerly one hundred feet on Sheridan street, and southerly one hundred and thirty feet on Front avenue. The building, as originally built, and before being injured, was a substantial brick structure, its different parts varying in height from three to five stories. Appellant has been, for some years past, engaged in constructing its railway into the city of Spokane on a line which passes near respondent's main building. In the construction of its railway along this line, it became necessary for appellant to procure a franchise from the city of Spokane authorizing the construction of the railway along Front avenue in a subway for a distance of eight hundred feet. The subway, as proposed and afterward constructed, is in that portion of Front avenue upon which respondent's brewery plant and grounds front, to the extent of approximately four hundred and fifty feet, respondent's main building fronting thereon to the extent of one hundred and thirty feet. The subway, as proposed and constructed, extends westerly along and in the avenue from the southwest corner of respondent's plant approximately two hundred and fifty feet, where the railway emerges therefrom into an open cut upon appellant's private property. The northerly side of the subway is approximately parallel with the southerly line of respondent's plant, and about thirty feet therefrom. The bottom of the subway is twenty feet or more below the surface of the street, the surface of the street for the whole distance of eight hundred feet being restored, after the construction of the subway, suitable for ordinary highway travel, as required by the franchise ordinances. The material taken from the subway in its construction consisted, in large part, of rock in place which was loosened by blasting with dynamite. This blasting, it is claimed, caused the damage to respondent's building for which compensation is sought in this action. In the years 1910 and 1911, a franchise ordinance and an amendment thereto were passed by the city of Spokane, granting to ap-

pellant the right to construct this subway in Front avenue. This franchise, among other conditions, contained the following:

"The said grantee shall not be authorized, under this franchise, to enter upon said Front avenue east of the east line of Sheridan street, or to lay or construct its tracks or roadway therein until it shall have fully compensated the owners of private property abutting upon said Front avenue, within the limits mentioned, for any damages which may be sustained by their said property by reason of the construction of the grantee's railway in said avenue. If the grantee and such owners of private property cannot agree as to the amount of such compensation, then the same shall be ascertained by condemnation proceedings in the manner provided by law in such cases."

The older portion of respondent's building was constructed in the year 1903, while the newer portion thereof was constructed in 1906 and 1907. Both portions have, from some cause, since their construction, received serious injury in the way of cracks in the foundation and upper wall, which greatly impair the value of the building, and for which the jury awarded to respondent as against appellant the sum of $28,-000 damages, manifestly upon the theory that damage was caused, at least to that extent, by blasting carried on by appellant in the construction of the subway. Other facts will be noticed as may become necessary in our discussion of appellant's several contentions.

It is contended by counsel for appellant that settlement was had for all damages which may have been caused by blasting in the construction of the subway, except such damage as may have resulted from appellant's negligence in so doing, and that full payment therefor was made by appellant to respondent before the commencement of the construction of the subway. This contention is evidently rested upon the theory that appellant acquired the right to so damage respondent's property as if such right had been acquired by condemnation. It is argued that the trial court erred in re-

fusing to give certain instructions requested to be given by · counsel for appellant which would, in effect, have withdrawn from the jury's consideration all damages other than such as may have resulted from appellant's negligence in blasting; and that the trial court also erred in withdrawing from the jury the evidence of settlement offered by counsel for appellant, and deciding, as a matter of law, in effect, that such claimed settlement had not been shown by the evidence offered.

The settlement in pursuance of which compensation was paid by appellant to respondent, and which is here relied upon by counsel for appellant as a bar to respondent's recovery in this action, at least as to all damages other than such as may have resulted from negligence of appellant in blasting, is found only in the language of a settlement contract entered into between appellant and respondent soon after the passage of the franchise ordinance and amendment thereto by the city; which settlement contract, in so far as we need here notice its terms, reads, after recitals therein referring to the franchise and the proposed construction and maintenance of the subway, as follows:

"It is understood and agreed by and between the parties hereto that the considerations paid and to be paid to the said Schade Company, as aforesaid, are to give to said railway company the same rights in entering upon and constructing and maintaining its railway in said street as if the said railway company had obtained a decree of appropriation in condemnation proceedings brought by it against the said Schade Company for the purpose of having the damages of said company for such construction and maintenance assessed and determined and had paid the amount of the award in such proceedings; that is to say, it is not the purpose of the parties hereto that the compensation paid as aforesaid shall be deemed as compensation to the said Schade Company for any damages which may be caused to the buildings and improvements of the said Schade Company, during the construction and completion of said company's railway in said Front avenue."

The concluding language of this quotation, it seems to us, renders it certain that the compensation paid in pursuance of that settlement contract was not intended to be for any damage of any nature which might occur to the building in the course of the construction of the subway from any cause. What possible purpose the parties could have in the use of this plain, unambiguous language other than to exclude the idea of the compensation paid under the contract being in any sense payment for such damage, we are quite unable to understand. Even ignoring this language of the contract excluding compensation for such damages, there is nothing in the contract indicating that the parties thereto contemplated a settlement for any such then speculative damages as are claimed and by the jury awarded to the respondent. Clearly, the mere acquiring of the right, on the part of appellant, as against respondent, to construct and maintain this subway in the street in front of respondent's property did not contemplate physical damage of this nature to respondent's building which was situated well outside of the outer boundaries of the land to be occupied by appellant's prospective subway. Such damage, we think, was then quite too much of a speculative nature to presume that the parties had its occurrence as the result of the construction of the subway in contemplation in the settlement as for damages upon condemnation. Our former decisions would decide this question in respondent's favor, even in the absence of the express exclusion of settlement for any such damages. *Olympia Light & Power Co. v. Harris*, 58 Wash. 410, 108 Pac. 940; *Casassa v. Seattle*, 66 Wash. 146, 119 Pac. 13; *Keil v. Grays Harbor & Puget Sound R. Co.*, 71 Wash. 163, 127 Pac. 1113; *Hinckley v. Seattle*, 74 Wash. 101, 132 Pac. 855. We are of the opinion that the trial court did not err in refusing to give the requested instructions, nor in excluding from the consideration of the jury the contract of settlement and payment thereunder, offered as proof of payment of the damages here claimed by the respondent.

At the beginning of the trial, counsel for appellant made what is, in substance, a motion for the court to require an election by counsel for respondent as follows:

"At this time I would call upon counsel to elect as between two inconsistent allegations of his complaint, as to inherent danger and as damages resulting therefrom, and the alleged negligence of the servants and agents of the defendant."

The court ruled that such an election would not be required, which ruling is claimed by counsel for appellant to be prejudicially erroneous to it. We are unable to see wherein these two theories of recovery are inconsistent. Manifestly, whatever damages were by appellant negligently caused to respondent's building in the construction of the subway would, in any event, constitute ground for recovery; nor would respondent's right to recover upon that ground be in the least impaired by the fact that it might also be entitled to compensation for the same damages caused without any negligence whatever on the part of appellant. It seems equally manifest that, if respondent had the right to recover compensation for damages to its building caused by appellant regardless of appellant's negligence, respondent's right to recover upon that ground would not be in the least impaired by the fact that it might also be entitled to recover for the same damages caused by the negligence of the appellant. Clearly, the evidence tending to support the respondent's right to recover upon each of these theories would not necessarily be contradictory. The argument of counsel for appellant seems to be, however, that they were entitled to have respondent's claim of damage rested upon the theory of inherent danger in blasting, segregated from any claim of damage rested upon the theory of negligence in blasting, so that whatever damage was caused as the result of inherent danger might be offset by the settlement contract, by being regarded as a damage which appellant acquired the right to inflict upon respondent's building by the settlement as if such right had been acquired by condemnation. We think this

argument is fully answered by our conclusion that no damage here claimed by respondent, whether regarded as resulting from inherent dangers, or as resulting from appellant's negligence, was contemplated at the time of the settlement as probable to occur to respondent's building from the construction of the subway, because such damage was then of a wholly speculative nature, and was not such as would ordinarily be determinable in an eminent domain proceeding; and especially in view of the fact that the settlement contract expressly excluded "any damages which may be caused to the buildings and improvements of said Schade Company during the construction and completion of said company's railway in said Front avenue." We conclude that, since there was no competent proof that damage which might have reresulted from the inherent danger of blasting in the construction of the subway was previously compensated for as claimed by appellant, nor that appellant ever acquired, by condemnation or otherwise, the right to inflict such damage upon respondent's building, respondent's counsel were not required to make the election insisted upon by appellant's counsel. This contention of counsel for appellant seems, in any event, to be dealing with a claimed error which was without prejudice, since we conclude that the question of appellant's negligence is of no consequence in this case, as will presently be seen.

Contention is made that the trial court erred in failing to instruct the jury upon the subject of negligence on the part of appellant, and in submitting the cause to the jury upon the theory that respondent would have the right of recovery regardless of appellant's negligence, if the damage to its building was, in fact, the result of appellant's blasting in excavating for the subway. Such seems to be the theory of the court's instructions, though the question of appellant's negligence is neither specifically submitted to nor withheld from the jury by the court's instructions. We are of the opinion, in view of certain facts which we regard as conclu-

sively shown, that it was proper for the court to regard the
appellant's negligence as being of no consequence in determin-
ing its liability to respondent in this cause.   It was, we think,
conclusively shown by the evidence that the blasting which in-
jured respondent's building, assuming, as the jury must have
found, that it was so injured, was of a very heavy nature and
effected by the use of dynamite; that the blasting was carried
on, at the furthest, within a few hundred feet of the build-
ing; that it resulted in seriously cracking both the founda-
tion and upper walls of the building; that is, if it had any
injurious effect upon the building, as the jury, of course,
found.   This contention, we think, is fully disposed of in
favor of respondent by the observation of Justice Gose in
our recent decision in *Patrick v. Smith*, 75 Wash. 407, 134
Pac. 1076, as follows:

"The authorities are agreed upon the question that one
who, in blasting upon his premises, casts debris upon the land
of another, is liable in damages regardless of the degree of
care or skill used in doing the work. 19 Cyc. 7.   But where
one, in blasting upon his land, exercising reasonable care,
causes a concussion in the air or a vibration in the earth, or
both, to the injury of the premises of another, but casts no
physical substance upon his property, the authorities are
divided on the question of liability.   One line of cases holds
that the injured party is without a remedy; the other line
holds that an actionable wrong has been committed.   We
think the latter view is both logical and just.   It seems il-
logical to say that, if one puts off a blast of powder, a sub-
stance inherently dangerous, on his own premises, which
causes a stone to be thrown through his neighbor's window,
he is liable without regard to the degree of care used; but if
it destroys his neighbor's house, but casts no physical sub-
stance upon the premises, he is immune from liability unless
it can be shown that reasonable care was not exercised."

Attention is called to our decision in *Hieber v. Spokane*, 73
Wash. 122, 131 Pac. 478, which, it is apparently insisted,
is applicable to the facts of this case.   We do not think so.

In the *Hieber* case, there was not involved any permanent physical injury to the adjoining property or buildings.

Our attention is called to certain special interrogatories submitted by the trial court to the jury, and the answers thereto returned with the verdict, as follows:

"Was the work of blasting for the work at the time and place in question inherently dangerous? Answer: 'No.' If you find that plaintiff's building was damaged by blasting, then state if the blasting could have been done without any damage, if proper precautions had been taken? Answer: 'Yes.'"

We think enough has been said already to show that, standing alone, the answer to the first interrogatory would have to be regarded as contrary to law, in view of the undisputed facts of this case touching the nature of the blasting. However, when both interrogatories and answers are read together, we think they amount simply to a finding of negligence on the part of appellant. This, it seems clear to us, would, in any event, be held to be without prejudice, since we conclude, as a matter of law, that respondent was entitled to recover, regardless of appellant's negligence, if the damage to respondent's building in fact occurred from appellant's blasting in the construction of the subway. We have noticed that it was conclusively shown that the damage occurred from that cause if it occurred from any act of appellant.

It is contended in behalf of appellant that it is not liable for the damages to respondent's building in any event, because the work of the construction of the subway was carried on for appellant by an independent contractor. While there may be two or three answers to this contention, we think a conclusive one is found in the terms of the contract existing between appellant and its contractor, Bates & Rogers Construction Company. By that contract, the construction company was to do the work of excavating and constructing the subway and receive compensation therefor by the method which is commonly called "force account," which is a per-

centage upon the cost of the work. Touching the supervision and control over the work of construction retained by the appellant, we find in that contract, which is in writing, the following:

"The construction company will oversee, superintend and execute for the railway company, in accordance with the plans and instructions of its chief engineer, the construction of a subway for the tracks of said railway company   . . .

"The construction company will employ and pay, subject to the approval of the chief engineer of the railway company, the necessary labor, clerical help and superintendence for said work   . . .   it will make any contracts for sub-letting any portion of the work in its own name and at the lowest prices consistent with the speedy prosecution of said work, having due regard to economy, so as to secure the completion at the earliest possible date; it will, subject to the approval of the chief engineer, purchase all material and supplies for said work not furnished by the railway company.

"The construction company will, so far as may be necessary for the prompt, economical and efficient prosecution of said work, devote the whole time of its principal officers in charge of said work, and will give the same its best skill, diligence and attention. The construction company agrees that all of said work shall be prosecuted under the direction of the chief engineer of the railway company, and that all contracts, specifications, agreements, and instructions for the doing of all or any part of the said work, and all specifications and prices of supplies and material furnished by it for the work, the rates for labor, arrangements for medical attendance and casualty insurance, if any and for all matters pertaining to the work, shall be subject to the approval of said chief engineer.

"The construction company agrees that the rate of progress of the work embraced in this agreement shall at all times be under the control of the railway company and at its direction, may be accelerated, suspended or stopped, and that the construction company shall not be entitled to any damages or allowances on account of such suspension or stoppage, but only be paid for such work as had been previously done, and for such material as had previously been furnished by it in pursuance of this contract."

The principle here involved was thoroughly reviewed in our recent decision in *North Bend Lumber Co. v. Chicago, Milwaukee & Puget Sound R. Co.*, 76 Wash. 232, 135 Pac. 1017, where Justice Fullerton, speaking for the court, said:

"A contractor, to be independent, must exercise an independent employment. He must be at liberty to perform the work he undertakes in his own way, at his own time within the limits of the time fixed in the contract, and by such means as to him seems most suitable. This does not mean, of course, that the contract itself may not prescribe that the work shall be performed in a particular manner, or that certain parts of it must be completed within a time less than the time fixed for the completion of the whole, or that certain means shall be employed in the accomplishment of the work, but it means that control over these matters must not be left to the whim or caprice of the employer, or his representative, to be exercised as the work progresses. If such right of control is retained, if the employer reserves to himself, or to his representative, the right to control at his pleasure the manner and means by which the work contracted for is to be accomplished, if the employer may stand by and tell the person undertaking the work, where, when and how it shall be performed, such person is the agent and servant of the employer, and not an independent contractor."

It seems quite plain to us that the Bates & Rogers Construction Company was not an independent contractor for the construction of the subway, and that appellant was not relieved from answering for damages of the nature here awarded resulting from such construction, whether caused by negligence or otherwise.

It is contended that the evidence was not sufficient to support the verdict and judgment, in that it was not such as to warrant the conclusion that the damage to appellant's building was the result of blasting in the construction of the subway, but that it was the result of other causes which had existed prior to the commencement of the construction of the subway. We have carefully reviewed all of the evidence touching this contention and deem it sufficient to say that we

cannot see our way clear to disturb the verdict for want of evidence to support it in this regard. While there was evidence tending to show that other causes contributed to the injury of the building before the commencement of the construction of the subway, there was ample evidence, if believed by the jury, warranting the conclusion that damage, at least to the extent awarded by the jury, was the direct result of blasting in the construction of the subway. There is no contention made here that the amount so awarded by the jury was excessive, but only that none of the injury to the building was the result of acts attributable to appellant.

Some other errors are suggested by counsel for appellant which we have not overlooked. We think, however, that the contentions thereon are clearly without merit, at least in so far as the prejudicial effect of such claimed errors is concerned, and that they do not call for further discussion.

The judgment is affirmed.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.