[No. 34864. *En Banc.* May 14, 1959.]

OLAF HAGEN, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 339 P. (2d) 79.

*A. C. Van Soelen* and *Frank W. Draper*, for appellant.

*Edwards E. Merges* (of *Merges, Brain & Berst*), for respondent.

HILL, J.—This is an action for property damage allegedly caused by the city of Seattle in the improvement of 23rd avenue southwest. The trial court directed a verdict against the city and submitted the issue of damages to the jury on special interrogatories. From the judgment entered upon the verdict and the answers to the interrogatories the city appeals.

The plat, covering the area with which we are here concerned, was recorded in 1888; and, by it, what is now 23rd avenue southwest was dedicated as a street sixty feet in width. It runs north and south, and the plaintiff's property has a fifty-foot frontage on the east side thereof. The portion of the street devoted to vehicular traffic was

graded in 1915, but only about half the width of the street was brought to grade at that time.

Plaintiff's property rises steeply to the eastward from the graded portion of the street. A six-foot-wide city sidewalk is located two feet outside of the plaintiff's property line. From the sidewalk a bank rises ten feet in height within a horizontal distance of twelve feet, creating a slope that approaches forty-five degrees. From the top of this bank the plaintiff's property continues to rise, but on a lesser slope.

Outside the sidewalk was a berm, or shoulder, several feet in width. From the edge of this shoulder another forty-five-degree slope extended down to the graded and traveled street level ten feet below. This bank, below the sidewalk, and also the shoulder, the city sidewalk, and two feet of the bank above the sidewalk, were all within the dedicated street and east of the graded portion thereof.

In 1957, the city undertook to pave the graded portion of the street to a width of twenty-five feet, leaving a two-foot shoulder between the edge of the paving and the bottom of the bank which occupied the easterly part of the street.

In order to create the proper width, the city's contractor cut into the toe of the bank to a maximum distance of three feet, reshaping the bank to its original forty-five-degree slope. Soon afterwards an earthslide occurred on the plaintiff's uphill property. Although the city had not originally planned to do so, it then constructed a retaining wall to hold the bank in place. It appears that this retaining wall arrested any further sliding of the plaintiff's property. Concrete walks and steps had to be repaired by the plaintiff; it is also claimed that there has been structural damage to the plaintiff's house, and that the slide's occurrence, regardless of physical damage, impaired the value of the property.

The plaintiff's factual theory is that the cut made in the toe of the bank caused the slide. The trial court implicitly accepted this causation, as a matter of law, in directing a verdict for the plaintiff. While a good factual argu-

ment can be made in favor of this causation of the slide, it seems clear that reasonable minds could have differed on this point. Testimony from Edwin H. Lindstrom, who supervised the construction of the retaining wall, and Frank A. Elinich, who inspected the street excavations on behalf of the city, indicates that the amount of earth actually removed from this bank may have been inconsequential in terms of causing uphill slides, and that vibration from construction equipment working in the street may have been the cause. The cause of the slide was properly a question for the jury, and it follows that it was error for the trial court to have made its own factual determination on this point.

The city's legal theory is that its liability, if any, must be based upon negligence. The plaintiff's legal theory is that this was, in legal effect, an exercise of the city's power of eminent domain and that Art. I, § 16, of the Washington constitution requires just compensation to be paid for the damaging of his property irrespective of any fault on the city's part. Although the plaintiff also offered evidence of the city's negligence, the trial court accepted the plaintiff's eminent domain theory of the case as the basis for its directed verdict.

This, too, was error. Our decisions have uniformly held that the establishment of an original grade, or improvements made thereupon, does not constitute a taking or damaging of property as contemplated by Art. I, § 16. The right to make an original grade is implied in the dedication of the street, and, in the absence of negligence, the making or improvement of such an original grade can be neither a taking nor a damaging of private property. *Fletcher v. Seattle* (1906), 43 Wash. 627, 86 Pac. 1046. (The original opinion in *Fletcher v. Seattle*, as here cited, is good law today, though the result was changed completely on rehearing (43 Wash. 631, 88 Pac. 843) because of a statute since repealed.) *Ettor v. Tacoma* (1910), 57 Wash. 50, 106 Pac. 478; *Stern v. Spokane* (1913), 73 Wash. 118, 131 Pac. 476; *Schuss v. Chehalis* (1914), 82 Wash. 595, 144 Pac. 916;

*Hollenbeck v. Seattle* (1915), 88 Wash. 322, 153 Pac. 18; *Fenton v. Seattle* (1925), 132 Wash. 194, 231 Pac. 795. See, also, *Muskatell v. Seattle* (1941), 10 Wn. (2d) 221, 116 P. (2d) 363. We find nothing in *Wong Kee Jun v. Seattle* (1927), 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625 (a case relied on by plaintiff), which detracts from the authority above cited. The *Wong Kee Jun* case concerns the damage done to abutting property due to the changing of a street grade, and contains nothing which overrules the "original grade" defense which the city asserts in the present case.

■ The proper allocation of the burden of proof, as to the "original grade" defense, is not a question before us in this case. The evidence is clear and uncontroverted that the city's contractor did not change the grade of the street at all in the process of paving it. The street surface was excavated down to a subgrade, six inches below grade, upon which the six-inch-thick concrete was poured. While the plaintiff attempts to argue this subgrade excavation as a change of grade, common sense tells us that it is not.

■ The only other excavation before the slide was the above-described cut into the toe of the bank for the purpose of widening the usable surface of the street at the established grade. This is nothing to distinguish this case from *Hollenbeck v. Seattle, supra,* in which this court said,

"If, then, the city was not bound to grade the whole of the street at one time, it follows that the establishment of a grade upon the west thirty-six feet (we are assuming that no paper grade was established for the whole street) was theoretically an establishment of a grade of the whole street, and that the city would not be liable in damage for the removal of the earth left on the east side of the street if the elevation of the graded part of the street was extended to the east boundary. That a city is not bound to maintain the lateral support of abutting property upon an original grade has been finally settled in this state. *Schuss v. Chehalis,* 82 Wash. 595, 144 Pac. 916." 88 Wash. at 325.

The further cut made in connection with the construction of the retaining wall caused no measurable slide and no appreciable damage to the plaintiff's property.

■ The plaintiff's cause of action must, therefore,

have been for negligence in the city's removal of lateral support of his land. See *Clark v. Olympia* (1921), 117 Wash. 506, 201 Pac. 755. We are satisfied that reasonable minds could differ upon whether the city was negligent in its improvement of this street; hence, the directed verdict cannot be upheld.

In the light of what we have said it necessarily follows that the trial court erred in giving instruction No. 1, which stated, as a matter of law, that the city was liable for any damages sustained by the plaintiffs. We do not want to tie the hands of the trial court in a new trial by directing the giving of specific requested instructions, such as the city's requested instructions Nos. 1, 3, 4, 5, and uniform jury instruction No. 7 of King county. We content ourselves with indicating that the requested instructions are correct statements of the law, albeit somewhat repetitious in spots.

Further, in the event of a new trial, it should be noted that, insofar as the testimony of the plaintiff's expert witness is based on the assumption that exhibit No. 1 represented the cut made before the slide, it is of no value, being based upon an assumption which not only has no basis in the evidence, but is definitely contrary thereto. *Beck v. Department of Labor & Industries* (1958), 53 Wn. (2d) 189, 195, 332 P. (2d) 54 (and cases there cited); *Standard Oil Co. of Louisiana v. Roach* (1935), 19 Tenn. App. 661, 672, 94 S. W. (2d) 63, 70.

The judgment on the verdict is reversed, and the case remanded for a new trial on the issues of negligence and damage.

ALL CONCUR.

---

August 14, 1959. Petition for rehearing denied.